## The Lehigh Valley Transportation Company v. Joseph Cook.

### Gen. No. 13,614.

1. PERSONAL INJURIES—*what essential to recover for.* In order to recover in an action for personal injuries, it is essential not only that proof be made of actionable negligence, but also the plaintiff must establish that he was at the time of the accident in the exercise of ordinary care for his own safety.

2. CONTRIBUTORY NEGLIGENCE—*when established.* Held, that it was contributory negligence for the plaintiff, knowing of the existence upon the deck of a ship of a hatchway, to walk (vision being obscured) over such deck without knowing whether the hatchway was open or closed.

BAKER, P. J., dissenting.

Action in case for personal injuries. Appeal from the Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1907. Reversed. Opinion filed January 14, 1908.

**Statement by the Court.** The plaintiff below, appellee, recovered a judgment against defendant, appellant, for $7,500 for damages for personal injuries. The

406     APPELLATE COURTS OF ILLINOIS.

VOL. 138 j     Lehigh Valley Trans. Co. v. Cook.

case comes to this court on an appeal from that judgment.

Appellant is the owner of a line of steamboats plying between Buffalo and Chicago. On April 27, 1905, shortly after seven o'clock A. M., the steamer Mauch Chunk, one of appellant's boats, arrived at appellant's dock in the Chicago river with a cargo of miscellaneous freight, a part of which at least was to be discharged at that dock.

William J. Connors, who was a co-defendant in the court below, was engaged in the business of loading and unloading steamboats belonging to appellant at the port of Chicago, under a contract, the terms of which are not disclosed in the record, but appellee was in the employ of Connors as a dock laborer, and was not in the employ of appellant.

The morning was cloudy and it was raining or misting. As the boat arrived at the dock the crew opened No. 3 gangway, which was about fifty feet from the bow of the vessel, and ran out a gangplank from the vessel to the dock. Because of the fact that the deck of the vessel was so much higher than the dock, John Lawless, who was in charge of a gang of dock laborers or stevedores, of which appellee was one, went along the dock with a part of his gang to procure another gang-plank to put in this same gangway for the purpose of reducing the incline or grade from the deck of the vessel to the dock. Appellee did not go with the part of the gang for the additional gang-plank, but, as he claims, in obedience to an order from Lawless, went on board the vessel to look for a truck, and fell through an open hatchway, which was about fifteen yards from the gangway where he entered, and was injured.

At the close of appellee's case a motion was made to direct a verdict for appellant, which was denied. This motion was renewed at the close of all the testimony, and it was again denied. Proper exceptions to the rulings were preserved.

ULLMANN, HACKER & HOAG, for appellant.

ELMER & COHEN, for appellee.

MR. JUSTICE SMITH delivered the opinion of the court.

In addition to proof of actionable negligence on the part of appellant, it was necessary, in order to make a case, that the appellee prove that at the time of the accident he was in the exercise of due care for his own safety—in other words, that his own negligence did not contribute to the injury. Cullen v. Higgins, 216 Ill. 78, 82.

Appellee was not in the employ of appellant. He was in the employ of Connors, and went on board the ship in obedience to the order of his foreman, Lawless, if any such order was given to look for a truck. The evidence as to where the trucks belonging to the ship were kept in the ship, is contradictory. Some of the testimony is to the effect that they were kept in the fan-tail, upwards of 400 feet from the place where appellee was injured, and some of the witnesses say they were kept in the forward part of the ship. It appears from the evidence that appellee had assisted in unloading this vessel on other occasions. If he did not know where the trucks were kept, it would have been only reasonable and prudent to have inquired of some of the boat's crew. Without stopping to make any inquiry, or waiting for the gang-plank which his foreman with a part of his gang had gone down the dock to procure for the purpose of reducing the grade from the deck of the vessel to the dock, in preparation for the work of unloading the cargo, and without waiting for the hatchway on the spar deck to be opened, which was done within a few minutes after he fell, he went on the main deck and walked about fifteen yards from the gangway, where it was dark, and stepped into the open hatchway No. 2. Appellee testified that he knew there was a hatchway there, but he says the

408    APPELLATE COURTS OF ILLINOIS.

VOL. 138.]        Lehigh Valley Trans. Co. v. Cook.

hatchways were generally closed, and on other occasions when he worked on this vessel this hatchway was closed.

At this time the ship was not fully prepared for unloading the cargo. The gangway and gang-plank was not ready for that purpose. The spar deck hatchways, known as three, four, five, six, seven, eight, nine and ten, had been opened, but hatchways one and two on the spar deck, which were over or nearly over hatchway two and would, when open, admit light to it, had not been opened. The freight checker who directs what freight is to be taken off was not there, and no orders had been given as to the handling of the freight.

In the opinion of a majority of the court, the evidence shows that appellee's own negligence contributed to his injury, and therefore he is not entitled to recover. It was not consonant with due care for his own safety for appellee, knowing that the hatchway was there, to walk over the deck without knowing whether the hatchway was open or closed. He had no right to assume that it was closed at that particular time, when, as he knew, the cargo of the vessel was to be discharged, and the hatchway might be open for that very purpose. As said in C., M. & St. P. Ry. Co. v. Halsey, 133 Ill. 248-254: "One who, failing to observe due care, blindly walks into a danger that the observance of due care would have enabled him to avoid, is no less guilty of contributory negligence, than he, being able, by the observance of due care, to extricate himself from danger, fails to make any effort for his personal safety, and because thereof is injured."

Appellant at the time of the accident had done nothing, in the opinion of a majority of the court, which cast upon it the duty toward appellee to keep the hatchway in question closed or guarded at the time appellee fell into it. The opening of the gangway was not an invitation to appellee to enter the ship, under the circumstances shown in evidence. As stated above, appellee was in the employ of an independent contractor.

Appellant had no notice of his intention to go near the hatchway, for there was nothing for him to do there, and at that point of time it could not be expected to guard against the action of appellee in walking around in the darkness where he was not invited or expected, in advance of the time when he, as a member of Connors' gang, might reasonably be expected to be on board the vessel for the purpose of unloading the cargo. He was not obliged to walk there for the purpose of removing and unloading freight, and he was not there for that purpose.

In Dwyer v. National Steamship Co., 4 Fed. Rep. 493, the court, in discussing the alleged duty of the owner of the steamer of maintaining the hatchway in a safe condition and the failure to discharge that duty, at page 495 said: "Hatchways are well-known features and sources of dangers on a ship. They are intended to be open a large portion of the time, especially when in port, not only for the purpose of loading and unloading cargo, but also for ventilation. An open hatchway on a ship, when provided with the usual coamings, is not evidence of a neglect of duty on the part of the ship-owner. On the contrary, a ship-owner has the right to allow the hatchways of his ship remain uncovered and unprotected, except by the usual coamings; and all persons moving upon the decks of a ship are chargeable with notice of the probable presence of open hatchways on the deck. Neither is it the duty of the ship-owner to maintain a guard stationed at the hatchway of his ship for the purpose of protecting persons from injury by falling into it. Such a duty would be burdensome in the extreme, and is not required by the law. Murray v. McLean, 57 Ill. 378. The requirement would be unreasonable, has never been observed in practice, nor, so far as I know, declared in any adjudicated case."

To the same effect is The Helios case, 12 Fed. Rep. 732, the court saying at page 733: "It was not a hatch for the usual stowage of cargo, such as stevedores must

410    APPELLATE COURTS OF ILLINOIS.

VOL. 138.]        Lehigh Valley Trans. Co. v. Cook.

at their peril look out for and are presumed to know about, and had no reference to the cargo, and the stevedores had no business with it, as the evidence shows."

For the foregoing reasons a majority of the court think that appellant is not liable. The judgment is reversed with a findings of facts.

*Reversed.*

Mr. Presiding Justice BAKER dissenting.

I think that the rules of law applicable to the owner or occupier of real property apply to the owner of the vessel in question. "The owner or occupier of real property is under the duty of exercising reasonable, ordinary care and prudence to the end of keeping his premises safe for the benefit of those who come upon them by his invitation, express or implied.    *    *    * The person so invited to come upon the premises of the other is entitled to assume that they will be in a reasonably safe condition." 1 Thompson on Neg., sec. 968.

Defendant contracted with Connors to unload its vessels at Chicago, and to unload a vessel Connors' stevedores must go on board the vessel they were to unload. Defendant therefore owed to them the duty to use reasonable care to make and keep that part of the vessel into which they might by implication be invited to go, or into which the defendant was reasonably bound to anticipate that they would go in unloading or preparing to unload the vessel, reasonably safe.

The only one of the vessel's officers or crew who was examined was Burke, the first mate, whose deposition was taken by the defendant and read at the trial by the plaintiff. He testified in part as follows, on his examination in chief: "Q. What did you do there, Mr. Burke, when you first came to the dock? A. We started opening up gangways to let the men aboard. Q. And for what purpose were you opening up the gangways? A. To let the men go aboard to unload the cargo." He further testified that the crew opened No. 2 gangway, which was fifty feet from the forward

end of the vessel; that plaintiff was in the gang working at No. 2 gangway.

The evidence warranted a finding by the jury that trucks were kept on the main deck of the vessel, at its forward end, and that plaintiff's foreman, after the gangway was opened, ordered plaintiff to go on board the vessel and get a truck. The gangway through which plaintiff went on the vessel was opened by the crew some time after the vessel reached the dock at Chicago. The opening of the gangway was, under the evidence, in my opinion, notice to Connors' employes that the vessel had been made ready for them, and was an implied invitation to them to come on the vessel. Forward of the gangway through which plaintiff came, was, in the main deck, an open, unprotected hatchway, twenty-one feet long, leaving a passage six feet wide at each end. It was dark in that part of the vessel where the open hatchway was. In the forward part of the vessel, on the main deck, was cement in bags. The checker mentioned was an employe of the Chicago agent of defendant, and did not go on a vessel until they were ready to unload. He told the foreman of the stevedores what freight was to be taken off, but the stevedores were subject to the orders of their own foreman. For all that Burke, the mate, or anyone on board the vessel knew, when the gangway was opened, the cement in the bow of the vessel might be unloaded first. I do not think that when the mate opened the gangways he had any right to assume that no stevedore would go, by order of his foreman or otherwise, forward from the gangway on the main deck; on the contrary, I think the invitation implied to come through the gangway on the main deck included an invitation to go to such place on that deck as it was necessary for a stevedore to go to unload or to prepare to unload the cargo, and that the servants of the defendant in charge of the vessel were bound reasonably to anticipate that a stevedore who came on board under such implied invita-

tion might go forward on that deck to get a truck or for some other purpose.

I think the question whether, under the evidence in this record, the act of defendant in permitting the hatchway through which plaintiff fell to remain open and unguarded constituted and was negligence, was a question of fact for the jury, as was the question whether the plaintiff was in the exercise of reasonable care for his own safety.