(No. 14753.—Judgment affirmed.)

THE CITY OF QUINCY, Appellee, vs. ANNA KEMPER et al.
Appellants.

*Opinion filed October 21, 1922.*

1. SPECIAL ASSESSMENTS—*when an improvement ordinance does not create monopoly—review.* So long as the specifications are open to competition it cannot be said that an improvement ordinance creates a monopoly, and where it is alleged that the specifications are such as can be furnished by only one producer, and the determination of the question depends upon the weight of the evidence, the Supreme Court will not disturb the conclusion of the trial court in favor of the ordinance unless it clearly appears from the record that such conclusion is wrong.

2. SAME—*when engineer's estimate is sufficiently itemized.* The statute requires only that the component elements of the improvement be set out separately, and where the improvement consists in paving a street the engineer's estimate may include in one item the asphalt wearing course and the concrete base estimated at a certain price per square yard, where there are other items for excavating and grading, for curbing, and for costs and expenses.

3. SAME—*the item for costs and expenses includes inspection of work.* Where the improvement consists in paving a street, the item for "court costs and necessary lawful expenses" includes inspection of the work, and it is not necessary to set out such costs in detail.

4. SAME—*assessment ordinance authorizing city to issue bonds is not void because not submitted to vote.* An improvement ordinance and the proceedings thereunder for paving a street by special assessment are not void because the ordinance, which provides for the issuing of bonds to pay the city's share of the cost and in anticipation of the collection of assessments, was not submitted to a vote of the people under the Referendum act of 1909, as that act does not apply to special assessments. (*People* v. *C., C., C. & St. L. Ry. Co.* 300 Ill. 368, distinguished.)

APPEAL from the Circuit Court of Adams county; the Hon. FRED G. WOLFE, Judge, presiding.

C. H. WOOD, for appellants.

JOHN T. INGHRAM, Corporation Counsel, for appellee.

Mr. CHIEF JUSTICE THOMPSON delivered the opinion of the court:

This appeal is from a judgment of the circuit court of Adams county overruling certain objections filed by appellants and others and confirming special assessments against their respective properties in a proceeding to pave Spring street, in the city of Quincy. The only objections that were properly raised in the court below that are presented and argued here are, first, the ordinance is void for the reason that it requires the use of a commodity or material which is controlled by one firm, so that competition and bidding are restricted; second, the engineer's estimate does not sufficiently itemize the several elements of the improvement; and third, the ordinance is void for the reason that it authorizes the issue of bonds, a portion of which is to be paid by general taxation, without being submitted to the voters of the city for their approval, in accordance with the requirements of an act approved June 4, 1909.

The ordinance provides: "The asphaltic cement shall consist of a refined solid natural asphalt softened with a liquid petroleum flux. Refined solid natural asphalt shall be construed to mean any natural mineral bitumen produced by refining a crude natural asphalt which through natural causes in the process of time has been reduced to a consistency harder than ten millimeters penetration, and which, without the addition of any other material, has the following characteristics:

"Water . . . . . . . . . . . . . . . . . . . . . . . . . . . . None
Penetration at 77 degrees Fahrenheit,
    No. 2 needle, 100 grams for five
    seconds . . . . . . . . . . . . . . . . . . . . . . . Not over 3 millimeters
Percentage of total bitumen soluble
    in carbon tetra-chloride. . . . . . . . . . Not less than 99%
Residual coke (ash free). . . . . . . . . . . . Not more than 15%
Paraffine scale . . . . . . . . . . . . . . . . . . . . Not more than 0.1%
Sulphur . . . . . . . . . . . . . . . . . . . . . . . . . Not less than 3%"

The objection is that the effect of this provision of the ordinance is to prevent competition among those desiring to contract to perform the work and furnish the material necessary to complete the improvement. It is conceded that this objection does not appear from the face of the ordinance, but appellants produced four witnesses for the purpose of showing that the only firm which could furnish asphalt to meet these requirements was the Barber Asphalt Paving Company. In addition to these witnesses the court heard the testimony of a chemist employed by that company. From the testimony of these five witnesses it appears that natural asphalt of varying grades is produced in many localities in this and other countries of the western hemisphere; that the greatest sources of natural asphalt are Pitch Lake, Trinidad, and Bermudez Lake, Venezuela; that these two lakes are owned by the Barber Asphalt Paving Company; that this company does not own or control any of the many other natural asphalt deposits; that Trinidad land asphalt, which is the overflow from Pitch Lake, springs from the same crater as the lake asphalt and has identically the same chemical characteristics; that none of this land asphalt is controlled by the Barber company; that there are many natural asphalts which are suitable for paving purposes and which would probably meet the test fixed by the ordinance in question, but they are not produced in such large quantities as the asphalts produced by the Barber company and are not so well known commercially; that Trinidad land asphalt and Maracaibo asphalt are both known commercially and are sold on the market and can be obtained by buyers for use in construction work, and both are natural asphalts which will meet the test fixed by the ordinance; that there is also a Cuban asphalt, a Mexican asphalt, a Kentucky rock asphalt, and many other natural asphalts which will comply with the specifications in question; that the Barber Asphalt Paving Company is for all practical purposes in control of the natural asphalt market, not be-

304—20

cause it is the only producer of natural asphalt but because it owns and controls the two sources where a high-grade asphalt can be produced in large quantities, and because it does, in fact, produce several times as much as all its competitors combined.

In *Fishburn* v. *City of Chicago,* 171 Ill. 338, we held that an ordinance which specified "refined Trinidad asphaltum obtained from Pitch Lake, in the island of Trinidad," was void because it created a monopoly in favor of the Barber Asphalt Paving Company, the sole owner of the lake. In the opinion filed in that case it was said, however: "If it be the judgment of the city council that the most suitable and best material to be used in any contemplated improvement is the product of some particular mine or quarry or some substance or compound which is in the control of some particular firm or corporation, the ordinance might be so framed as to make such production, substance or compound the standard of quality and fitness and to require that material equal in all respects to it should be employed." An ordinance making such a provision was sustained by this court in *Gage* v. *City of Chicago,* 207 Ill. 56, and the language of the *Fishburn case* was quoted with approval in *City of Rockford* v. *Schultz,* 296 Ill. 254.

The record shows clearly, and practically without dispute, that there are natural asphalts which are sold on the market and which are not produced by the Barber Asphalt Paving Company which will meet the requirements of this ordinance, and it does not seem reasonable to hold that the city council shall not require this high-grade asphalt to be used solely because one company produces and sells most of the product. So long as the specifications are open to competition it cannot be said that the ordinance creates a monopoly. As far as this record shows, contractors who submit bids to construct this improvement may buy their natural asphalt from a number of sources that are not controlled by the Barber company. The trial judge saw and

heard the witnesses and had advantages which we do not possess in judging of the weight which should be given to their testimony where there was conflict.   Under the law and established rules of practice the conclusions of the trial judge should not be disturbed unless it clearly appears from the record that such conclusions are wrong.   (*Kuehne* v. *Malach,* 286 Ill. 120; *Podolski* v. *Stone,* 186 id. 540; *Wood* v. *Price,* 46 id. 435.)   The trial court properly overruled the objection that the ordinance created a monopoly.

In his estimate the engineer divided the cost of the improvement into four separate items, one item being for excavating and grading, another for curbing, another for paving, and another for costs and expenses.   It is contended that the item for paving is double and that it should have been divided.   It reads:

> "13,750 square yards asphalt pavement, consisting of a sheet asphalt wearing course two inches thick and an asphalt binder course one inch thick on a Portland cement concrete base five inches thick, complete in place, at $4.00 per sq. yd.........................$55,000"

It is not intended that each item of cost shall be set out separately in the engineer's estimate.   The statute only requires that the component elements of the improvement be set out separately.   One of the elements of this improvement was the wearing surface to be laid in the street after the excavating and grading were done.   This element has been itemized separately, and under earlier decisions of this court the itemization is sufficient.   *Hulbert* v. *City of Chicago,* 213 Ill. 452; *Connecticut Ins. Co.* v. *City of Chicago,* 217 id. 352; *Gage* v. *Village of Wilmette,* 230 id. 428; *City of Chicago* v. *Underwood,* 258 id. 116.

It is further contended that there is no provision made for inspection of the improvement.   The item for "court costs and necessary lawful expenses" includes inspection, (*City of Carlinville* v. *Anderson,* 303 Ill. 247,) and it is not necessary to set out these costs in detail.   *Gault* v. *Vil-*

*lage of Glen Ellyn,* 226 Ill. 520; *City of Park Ridge* v. *Wisner,* 253 id. 360.

Lastly, it is contended that the ordinance is void because it authorizes the issue of bonds, a part of which must be paid by general taxation, without first having the ordinance submitted to the voters of the city for their approval. In *Hallett* v. *City of Elgin,* 254 Ill. 343, we held that the referendum act of 1909 did not apply to bonds issued against special assessments, and that it was not necessary to submit to the voters the question of issuing bonds provided for in an improvement ordinance where it is clear that it was not contemplated that any part of the sum provided to be paid by general taxation should be represented by a bond issue. The act provides: "That hereafter no ordinance passed by the city council of any city, * * * which provides for or authorizes the issue of bonds * * * shall become operative, effective or valid until any such ordinance shall have been submitted to the voters of any such city * * * and approved by a majority of such voters voting upon the question." (Laws of 1909, p. 130.) If this act were held to apply to ordinances providing for improvements by special assessment it would be impossible for the city council to comply with it and the provisions of the Local Improvement act providing for improvements by special assessment would be nullified. It is not possible to determine the amount to be paid by the city, if any, in a special assessment proceeding until the proceeding is finally concluded. The city council would not be able to state on the ballot prescribed by the act what amount of bonds, if any, was to be issued. The ordinance in question provided that the improvement be paid for by special assessment to be levied upon property specially benefited to the amount that the same might be legally assessed therefor and that the remainder of the cost be paid by general taxation. It is further provided that the individual assessments and the

assessments against the city of Quincy on account of property owned by the municipality and for public benefits be divided into ten installments, and that for the purpose of anticipating the collection of the second and succeeding installments the city should issue bonds. This ordinance clearly authorizes the city to issue bonds, and if for that reason it is to be held inoperative and ineffective until it has been approved by the voters at an election such as is contemplated in the referendum act above quoted, then there can be no proceeding in the county or circuit court to determine what, if any, assessment should be made against the city. To hold that an ordinance providing for an improvement by special assessment comes within the terms of the referendum act would be to hold that the city could not conduct the proceeding in court to determine the amount, if any, to be assessed against the city without first submitting the ordinance for approval, and at the same time to hold that the ordinance could not be submitted for approval until it had been determined in court the amount that was to be assessed against the city, so that that amount could be stated on the ballot. It is not to be presumed that the legislature intended any such absurd consequence to follow this piece of legislation, and so we must hold that the referendum statute does not apply to an ordinance providing for a local improvement by special assessment though the ordinance does authorize the city to issue bonds. Whether the statute applies to that part of the ordinance authorizing the issuance of bonds should the city undertake to issue bonds for the purpose of anticipating the collection of the deferred installments assessed against the city is not presented for decision in this case, because no bonds have been issued and there is nothing in the record to indicate that the city contemplates issuing bonds to be retired by general taxation without first submitting the question to a vote of the people.

Our conclusion in this case is not in conflict with *People v. Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* 300 Ill. 368. In that case the improvement was to be paid for by special taxation. The village knew when the ordinance was passed the amount that was to be paid by the village by general taxation, and the bonds were actually issued for the amount fixed by the ordinance.

The circuit court properly held that the proceedings under the ordinance in question were not void for the reason that the ordinance had not been approved by a majority of the voters of Quincy at an election held for that purpose.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*

---

(No. 14782.—Judgment affirmed.)
THE PEOPLE *ex rel.* Robert B. Ennis *et al.* Appellants, *vs.* JAMES H. PARKER *et al.* Appellees.

*Opinion filed October 21, 1922.*