**BANK OF BURLINGTON v. CITY OF MURPHYSBORO, ILL.**

No. 6400.

Circuit Court of Appeals, Seventh Circuit.

May 11, 1938.

June C. Smith and Hugh V. Murray, Jr., both of Centralia, Ill., and W. M. Wolff, of Murphysboro, Ill., for appellant.

Robert N. Erskine, of Chicago, Ill., for appellee.

Before SPARKS, MAJOR, and TREANOR, Circuit Judges.

TREANOR, Circuit Judge.

The plaintiff, Bank of Burlington, prosecuted this suit in equity against the defendant, City of Murphysboro, for an accounting of trust funds, and for a decree for payment to the plaintiff as the beneficial owner of the funds. The decree of the District Court adopted the finding of facts and conclusions of law made by a special master in chancery, and determined the amount to be paid by the City of Murphysboro. And from the decree of the District Court the defendant has perfected this appeal.

On July 29, 1919, the city council of the City of Murphysboro passed Ordinance No. 111, which provided for the construction of a local improvement known as Paving District No. 13. The ordinance was passed and the improvement therein provided for was constructed under and in accordance with the Local Improvement Act of the State of Illinois.[1]

The total assessment, against private property and against the municipality, as finally confirmed by the county court, was divided into ten annual installments, as provided in the statute. The total aggregate amount of the first installment against private property and for public benefits was $8,803.37, and each of the succeeding installments, from two to ten, inclusive, was $8,600.

Bonds were issued and delivered to the contractor in payment for work done in constructing the improvement, and thereafter the Bank of Burlington, plaintiff in this case, purchased $7,000 of the bonds, all payable from the tenth installment of the assessment. Each of plaintiff's bonds contained the provision, as required by the Local Improvement Act, that it was issued to anticipate the collection of a part of the tenth installment of the special assessment levied for the purpose of paying the cost of constructing the improvement, and that it was payable solely out of the tenth installment when collected.

---

1 Ill.Rev.Stat.1937, c. 24, §§ 698–808.

It is not questioned that all of the provisions of the Local Improvement Act were carefully followed in the instant case. But it is the contention of defendant that the claim of plaintiff is invalid, under the decisions of the Supreme Court of Illinois, for the reason that it rests upon bonds which were issued without compliance with an "Act requiring cities, villages and incorporated towns to submit certain ordinances authorizing the issue of bonds, * * * to the voters of any such city, village or incorporated town." Laws Ill. 1909, p. 130.[2]

The defendant relies upon three grounds for reversal:

(1) The failure to submit to a referendum the proposal to issue improvement bonds to anticipate installments of the assessment against the City of Murphysboro; (2) the alleged failure to give proper credit for interest paid to plaintiff by defendant; and (3) that the decree holds defendant liable for acts of the city treasurer, which acts the decree "further finds the treasurer did not commit."

The defendant does not controvert the plaintiff's proposition that the funds of the tenth installment, when collected, became a trust fund for the benefit of the holders of bonds which had been issued against the tenth installment; nor that a diversion of such funds to some other purpose would render defendant liable to the bondholders. The defendant contends, however, that the funds were trust funds only as to valid obligations, and that the bonds in the instant case were illegally issued and were void because the proposition to issue the bonds was not submitted to a referendum vote of the voters of the municipality as required by the act of 1909. The defendant states his position thus: "The validity of appellee's bonds and the right of the city to issue those bonds is the foundation of appellee's claim. If the bonds were not lawfully issued by the municipality, then clearly appellee has no interest in the funds alleged to have been diverted."

It is the position of plaintiff that the Referendum Act does not apply to bonds which are issued for the purpose of anticipating installments of assessment funds which are collected under the authority of the Local Improvement Act; and that the referendum is required only in the case of an ordinance which authorizes the issuance of bonds to borrow money upon the credit of the issuing municipality, and which bonds create a bonded indebtedness. And plaintiff further contends that under the facts of the case the defendant cannot set up as a defense the defendant's own failure to submit to the voters the proposition of issuing bonds.

■ The act which requires the referendum does not define "bond." Ordinarily, in legislative usage, a municipal bond connotes bonded indebtedness; and, in the absence of explanatory or qualifying language, a legislative grant of authority to a municipality to issue bonds carries with it, as a necessary incident, the power to make the bonds a charge upon the general credit of the municipal corporation. And the General Assembly of Illinois, by the use of appropriate language in the Local Improvement Statute, carefully provided that the improvement bonds should not create a bonded indebtedness against the issuing municipality.

■ The decisions of the Supreme Court of Illinois clearly establish that the original local improvement ordinance which authorizes special assessments against property of private owners only, and which authorizes the municipality to issue installment anticipation bonds, is not controlled

---

[2] Ill.Rev.Stat.1917, c. 24, §§ 697 and 698, Smith-Hurd Ill.Stats. c. 24, §§ 661, 662.

§ 1. "* * * That hereafter no ordinance passed by the city council of any city, or board of trustees of any village or incorporated town, as the case may be, which provides for or authorizes the issue of bonds (except bonds to refund any existing bonded indebtedness), shall become operative, effective or valid until any such ordinance shall have been submitted to the voters of any such city or village or incorporated town, as the case may be, at the next succeeding general or special election or any special election called for that purpose, and approved by a majority of such voters voting upon the question."

§ 2. "A statement of the substance of such ordinance in the manner hereinafter provided shall be printed on a ballot, which shall be separate and distinct from the ballot, for candidates for office, stating the amount of the bond issue provided for in such ordinance and the purpose or purposes for which such bonds or obligations are to be issued; but it shall not be necessary to print in full such ordinance on the ballot."

902

by the provisions of the Referendum Act of 1909.[3] And we understand the decision in City of Quincy v. Kemper[4] to hold that the original ordinance need not be submitted to a referendum even if the ordinance authorizes a special assessment against the municipality, and also provides for the issuance of bonds to anticipate the collection of taxes, by the municipality to pay the installments of the special assessment, which represents its share of the cost of the local improvement.

In the case of City of Quincy v. Kemper, supra, an appeal had been taken from a judgment of the circuit court overruling certain objections filed by appellant and others and confirming special assessments against their respective properties. One of the objections was that the ordinance, which authorized the issue of improvement bonds to anticipate the collection of assessment installments, had not been submitted to the voters of the city for their approval in accordance with the requirements of the Referendum Act. The ordinance provided that the improvement be paid for by special assessment to be levied upon the property specially benefited to the amount that the same might be legally assessed therefor, and that the remainder of the cost be paid by general taxation. The ordinance further provided that the individual assessments and the assessment against the City of Quincy, on account of property owned by the municipality and for public benefits, should be divided into ten installments, and that for the purpose of anticipating the collection of the second and succeeding installments the city should issue bonds. The answer of the Supreme Court of Illinois to the contention that the ordinance was invalid is contained in the following excerpt from its opinion (page 765): "This ordinance clearly authorizes the city to issue bonds, and if for that reason it is to be held inoperative and ineffective until it has been approved by the voters at an election such as is contemplated in the referendum act above quoted, then there can be no proceeding in the county or circuit court to determine what, if any, assessment should be made against the city. To hold that an ordinance providing for an improvement by special assessment comes within the terms of the referendum act would be to hold that the city could not conduct the proceeding in court to determine the amount, if any, to be assessed against the city without first submitting the ordinance for approval, and at the same time to hold that the ordinance could not be submitted for approval until it had been determined in court the amount that was to be assessed against the city, so that that amount could be stated on the ballot. It is not to be presumed that the Legislature intended any such absurd consequences to follow this piece of legislation, and so we must hold that the referendum statute does not apply to an ordinance providing for a local improvement by special assessment, though the ordinance does authorize the city to issue bonds. Whether the statute applies to that part of the ordinance authorizing the issuance of bonds should the city undertake to issue bonds for the purpose of anticipating the collection of the deferred installments assessed against the city is not presented for decision in this case because no bonds have been issued, and there is nothing in the record to indicate that the city contemplates issuing bonds to be retired by general taxation without first submitting the question to a vote of the people."

■ The reasoning and holding in City of Quincy v. Kemper leave no doubt that the ordinance in the instant case was valid, and that the county court's determination of the amounts of the special assessments to be paid by the property owners and by the municipality of Murphysboro was valid and conclusive as to those amounts. The court did not decide whether it would be necessary for the city council to pass a special ordinance authorizing the issuance of improvement bonds, and to submit this ordinance to the voters of the city, in case the city should decide to issue bonds to anticipate the collection of taxes to pay the second and succeeding installments of the city's assessment. But it is clear from the opinion that failure to do so, even if required by law, could not invalidate the local improvement proceeding.

In the instant case the entire local improvement proceeding was carried out in good faith and in strict conformity with the

[3] Hallett v. City of Elgin, 254 Ill. 343, 98 N.E. 530; Lawrenceville v. Hennessey, 244 Ill. 464, 91 N.E. 670; Nokomis v. Zepp, 246 Ill. 159, 92 N.E. 809; City of Chicago v. Crozer, 246 Ill. 511, 92 N. E. 947.

[4] 304 Ill. 303, 136 N.E. 763.

provisions of the Local Improvement Act. The contractor completed the construction of the public improvement, and no question was raised as to the proper performance of the work, and no objection was made to the regularity of the procedure of the city council, nor to any of the various proceedings in the county court. The improvement bonds were issued without objection by the city or by any person, either as property owner or as taxpayer. All claims represented by bonds were paid excepting the claim of the plaintiff, which was represented by seven bonds of the last series.

The City of Murphysboro, as trustee for the holders of the improvement bonds, collected from its taxpayers the taxes which were levied to meet the second and succeeding installments of the city's assessment. As between the city and the plaintiff that part of the fund so collected, which was represented by plaintiff's bonds, belonged to the plaintiff; and the plaintiff is entitled to have an accounting and to receive the funds collected for it by the city, unless the city has a right to withhold the funds from the plaintiff because of a defect in plaintiff's claim caused by the failure of the city to perform a duty which the city owed to the voters of the city.

The improvement bonds in question are a charge upon the entire tenth installment of the special assessment levied for the purpose of "grading, curbing, paving and draining Paving District No. 13 * * *"; and these bonds "and interest thereon are payable solely out of said installment, when collected." The bonds which were issued as a charge upon the tenth installment aggregated $8,600, and of this sum $6,866.31 represented assessments against private owners, and $1,733.69 represented the assessment against the city. If the defendant's contention is sound, the plaintiff would lose his entire claim, although it is obvious, under the City of Quincy Case, that his claim was valid for an amount equal to his proportionate share of the tenth installment which was collected from assessments against private owners, regardless of the effect of defendant's failure to submit to the voters the question of issuing the improvement bonds to anticipate the collection of taxes to pay the city's portion of the assessment.

But we are also of the opinion that the plaintiff is entitled to an accounting and decree of payment for all of his proportionate share of the tenth installment. And it is material to this conclusion that the bonds issued under the Local Improvement Act do not create a debt obligation against the municipality. The municipality agrees to pay the amount of the face of the bonds, with interest, only out of the installments when collected. The holder of the bonds does not acquire any greater right by reason of ownership of the bonds than was enjoyed by the contractor who received the bonds as formal acknowledgment of his claim for materials and labor, and as warrants drawn against installments of the assessment when collected. Granting the invalidity of the improvement bonds, no right against the city, which is created by the execution of the bonds, is destroyed. For purposes of this suit the bonds only furnish evidence of the extent of plaintiff's claim against the trust fund, and are in no sense the basis of the claim asserted against the defendant city. Invalidity of such bonds cannot entail the same legal consequences as invalidity of bonds which create a bonded indebtedness against a municipality and which constitute the sole basis, and determine the extent, of the claim of the holder against the issuing municipality.

The foregoing becomes important in applying the holding of City of Quincy v. Kemper to the facts of the instant case.

Defendant assumes that three steps are necessary and indispensable in order to enable a city to construct a local improvement to be paid for by special assessment. These three steps are as follows:

(1) The proceedings required by the Local Improvement Act must be taken by the city council.

(2) The designated procedure must be followed in a court of competent jurisdiction for levying the assessment against private property which would be benefited by the improvement, and against property owned by the city, and against the city for public benefit.

(3) After the first two steps are completed if any portion of the assessment is levied against the city and bonds to anticipate the collections of the deferred installments of the assessment levied against the city are to be issued, the proposition

904

to issue such bonds must be submitted to the voters of the city for approval.

 The defendant insists that these various steps are equally important and that the power of the city council to construct a local improvement cannot be exercised without taking the three steps. But it is necessary to conclude from the decision of the Illinois Supreme Court in the case of City of Quincy v. Kemper, supra, that the validity of the proceeding is not affected by a failure to submit to the voters for approval the proposition to issue bonds to anticipate the collection of the installments of the assessment against the city. When a local improvement project has been completed in accordance with the provisions of the Local Improvement Act, and when improvement bonds have been issued in anticipation of the collection of the second and succeeding installments of the assessment, both against private property and against the city, we think that under the Kemper Case no question can be raised as to the legality of the steps taken by the council and by the proper court. Assuming that the Referendum Statute applies to the issuance of local improvement bonds by a municipality, to anticipate installments of its own assessment, the failure of the council to submit the proposition of issuing such bonds to a referendum could not, under the Kemper Case, invalidate the proceedings; at the most such failure would give a taxpayer the right to resist collection of the tax which had been levied for the purpose of paying the city's portion of the installments anticipated by the improvement bonds. But when no objection has been raised, as in the instant case, to the issuance of the anticipation bonds, and when the taxes have been levied and collected without objection on the part of any taxpayer, and when the municipality, as a trustee, has received the taxes as a trust fund to be held and paid over to the holder of such bonds, we are of the opinion that the trustee municipality is estopped to set up its own wrongdoing to justify its refusal to account for and pay over trust funds which it has collected for the benefit of the claimant, who, in equity and good conscience, is entitled to be paid.

 As to defendant's contention that the amount of the decree of the District

Court is excessive we believe that we are bound by the decree of the court which was based upon the master's report. Paragraph 7 of the statement of evidence recites that the special assessment collection record of the City of Murphysboro was in evidence in its entirety as an exhibit; and that this record consisted of the detailed record of the collection of the installments of all of the assessments against private property and the record of the payment of public benefits; and that such record indicates the date and amount of payments of both principal and interest of each of the ten installments of each separate assessment against any lot or parcel of private property, and also the record of payment of each of the ten installments of the public benefits assessed to the city. It was the function of the master to examine the record of collections and disbursements relating to the improvement, and on the basis of this record and other evidence to report the facts material to the accounting. On the basis of this report the District Court by its decree has fixed the total amount which is supported by the finding of facts set out in the master's report. The statement of the evidence in the record does not contain facts from which this court can by computation determine that the ultimate facts stated in the master's report were not sustained by the detailed record which was available to him.

 The decree in this case is not vitiated by the fact that the city treasurer and other officers who were made codefendants were dismissed from the suit. The bill asked for mandatory relief and these officials were properly joined, since the scope of mandatory relief which was requested would have called for action by these officials. Evidently the District Court, in dismissing the named officers from the suit, acted upon the suggestion of the master that the complainant was not entitled to mandatory relief in the instant suit for the reason that, as stated in the master's report, "it cannot be presumed that the city will fail to carry out any decree which the court may render * *". Rothschild v. Village of Calumet Park, 350 Ill. 330, 342–344, 183 N.E. 337.

We find no reversible error and the judgment of the District Court is affirmed.