**Henry Loeb, Appellant, v. Herbert Corrie, Appellee.**

**Term No. 45,010.**

October term, 1945. Heard in this court at the Opinion filed January 14, 1946. Released for publication February 14, 1946.

SUMNER & LEWIS, of Lawrenceville, for appellant.

BEN H. TOWNSEND, of Mt. Carmel, for appellee.

MR. JUSTICE CULBERTSON delivered the opinion of the court.

This is an appeal from a judgment of the circuit court of Lawrence county, against plaintiff appellant, Henry Loeb (hereinafter called plaintiff), and in favor of the defendant appellee, Herbert Corrie (hereinafter called defendant). This cause was tried before the court, without a jury.

This case arose out of an accident which occurred on the 17th day of August 1943, shortly after 10:00 o'clock in the morning, when the defendant was engaged in operating a tractor and mower in mowing a certain section of State Highway No. 1, which section extended southward from an intersection just north of Healey's Market, in Lawrence county, State of Illinois. The tractor involved in the accident was a Farmall 20, and was about ten feet long and eight feet wide from outside of tire to outside of tire on the rear wheels. Attached to the tractor, at the back, was a

Massey-Harris mower, which was bolted by two bolts and two iron strips, or stirrups, to the draw bar on the rear of the tractor, making the connection of the mower to the tractor, rigid, the two bolts on the draw bar being twenty to twenty four inches apart.

The defendant at that time had proceeded with his tractor, to which was attached the mower, along the east side of the highway, up to the intersection, and then, for the purpose of having his tires looked after, had crossed the intersection to a garage situated just north of the intersection. After leaving the garage he crossed to the west of the pavement to come south, and in doing so he had to come past a point known as ''Healey's Market,'' which was situated on the west side of the highway at about 100 feet south of the intersection. Along the west side of the highway from the intersection south to a point approximately 25 feet south of Healey's Market, the shoulder consisted of gravel and cinders and there was no mowing to be done until a point was reached from 25 to 35 feet south of the market. The market was situated about 18 feet from the paved portion of the highway.

On the morning of the accident in question, the plaintiff and his son-in-law were driving north on the highway, and upon coming opposite Healey's Market, pulled their car off on the shoulder on the east side of the pavement and crossed over to Healey's Market to purchase some melons. The defendant, as he left the garage north of the intersection, had the sickle bar of his mower in what is called the ''raised position,'' and as he came south with the tractor and mower he was driving with his left wheels to the east of the black center line of the pavement about 3 feet, and as he approached the part of the pavement in front of the market he saw the plaintiff and his son-in-law come from the market toward the pavement. Defendant threw his tractor out of gear and came almost to a stop so as to permit plaintiff and his son-in-law to

cross the pavement ahead of him, but instead of cross-
ing ahead of the tractor, the plaintiff and his son-in-
law stopped some 6 or 7 feet away from the pavement,
and upon seeing them do so, the defendant threw his
tractor into gear and was proceeding slowly south on
the pavement. It appears that at the time the plain-
tiff was standing on the west shoulder of the road,
and that he had two large cantaloupes, one in each
hand, which he was holding with his hands raised up-
ward and about even with his shoulders. The son-in-
law of the plaintiff appears to have then been standing
about even with him, but north by a few feet. As the
tractor and mower came down the pavement, the sickle
bar extended over the pavement west, about 2 or 2½
feet, the east wheels of the tractor then being east of
the black center line of the pavement about 3 feet.
The sickle bar was in the raised position so that the
outer end of the bar was raised above the ground 2
feet, or more. Upon the end of the sickle bar and at
right angles to it, there was a parting board, 18 inches
long and 7 inches high, with a rolled top 2 or 3 inches
wide.

Plaintiff testified that before he got to the pave-
ment, with the intention of crossing same to return to
his car, that he looked around to see whether there was
a car coming, and that he observed the tractor coming
from the north, going south, and that he stopped from
6 to 7 feet on the west side of the pavement, waiting
for the tractor to come past. As the tractor got even
with plaintiff and was about to pass him, plaintiff con-
tends that he was looking at Mr. Corrie sitting on the
tractor and driving it, and Mr. Corrie was looking at
the plaintiff, "just looking face to face, and that all at
once I was down on the ground, and I never noticed a
sickle. I would say he turned toward me, going into
that fruit stand, because, otherwise, if he had went
straight, he would have missed me." The other tes-
timony seems to rather uniformly be that as the

tractor came opposite or about directly in front of plaintiff, that plaintiff stepped toward the pavement, and was struck by the sickle bar, which caused a fracture of his left leg just below the knee. It appears from the evidence that the defendant immediately applied his brakes and that he stopped within a foot, or less. Harlan Corrie, an uncle of the defendant, who was on the tractor at the time the accident happened, testified that as they got to the market he was watching for traffic to come from the east, or west, or north, or south, and that he saw the plaintiff and his son-in-law come from the market towards the road, and that they walked out fairly close—not too close, and Herbert stopped, or nearly stopped, and just as he started up, the plaintiff herein stepped out and started ahead, and stepped east toward the paved part of the highway, and that he ''just stepped out in front of the end of the bar.'' Defendant further testified that immediately after he struck the plaintiff and while the plaintiff was on the ground, and before they picked him up, that plaintiff said, ''Oh, it's my fault; it's my fault.'' The making of this statement plaintiff denies. We believe that the foregoing is a fair summary of the evidence as it was produced on the trial of this cause before the court, without a jury.

It is contended on this appeal that the judgment of the court is contrary to the manifest weight of the evidence, and that the judgment of the trial court should be reversed, and that a judgment should be entered in favor of the plaintiff in a sum not less than $3,000 or more than $5,000. It would appear to us from an examination of the record in this case that an issue of fact was presented to the trial judge who heard this case and tried same without a jury, and his finding is entitled to the same weight as is a verdict of the jury, and will not be disturbed by an appellate tribunal, unless it is manifestly against the weight of the evidence (*Moore v. David J. Molloy Co.,* 222 Ill.

App. 295, 298; *People v. C. & E. I. Ry. Co.,* 258 Ill. App. 535, 540; *McCracken v. First Nat. Bank of Wheaton,* 204 Ill. App. 20, 21; *Hankins v. Colley,* 106 Ill. App. 522).

In giving consideration to the question of whether or not the finding of the trial court is contrary to the manifest weight of the evidence, a reviewing court must have regard for the better opportunity of the trial court to determine the facts by reason of its opportunity to see and hear the witnesses (*Marble v. Estate of Marble,* 304 Ill. 229, 232; *City of Quincy v. Kemper,* 304 Ill. 303, 307).

There was in this case a positive burden upon the plaintiff to prove by a preponderance of the evidence the negligence of the defendant, as charged, and his own freedom from contributory negligence (*Dyer v. Talcott,* 16 Ill. 300; *Abramovitz v. Chicago City Ry. Co.,* 172 Ill. App. 208, 211; *Ashland Auto Garage v. Chicago Rys. Co.,* 183 Ill. App. 207, 208; *LeHigh Valley Transp. Co. v. Cook,* 138 Ill. App. 405, 407).

The evidence in this case persuades us, and we so hold, that the judgment of the court in this case is not against the manifest weight of the evidence, but the evidence, on the contrary, gives abundant support to the finding and judgment of the trial court in favor of the defendant.

There being no error in this case and the judgment being right under the law and the evidence in this case, the same is hereby affirmed.

*Judgment affirmed.*

STONE, P. J., and BARTLEY, J., concur.