WILLIAM F. HALLETT *et al.* Appellants, *vs.* THE CITY OF ELGIN *et al.* Appellees.

*Opinion filed April 18, 1912—Rehearing denied June 6, 1912.*

1. MUNICIPAL CORPORATIONS—*the act of 1909 does not require question of issuing special assessment bonds to be voted upon by people.* The act of 1909, (Laws of 1909, p. 130,) requiring ordinances authorizing the issue of bonds to be submitted to the voters, does not apply to bonds issued in anticipation of the collection of installments of a special assessment from property owners.

2. SAME—*what is meant by the term "lowest responsible bidder."* The statutory requirement that a contract for a local improvement shall be let to the lowest responsible bidder does not mean financial responsibility, only, but the term "responsible" includes also the ability to respond by the discharge of the contractor's obligations in accordance with what may be expected or demanded under the terms of the contract.

3. SAME—*improvement board's action in letting contract is presumed to be lawful and regular.* The board of local improvements has the power to award contracts for the construction of local improvements, and the action of the board in awarding a contract is presumed to be regular and lawful even though it was not awarded to the lowest bidder.

4. INJUNCTION—*party attacking improvement board's action in letting contract has burden of proof.* Parties seeking to enjoin the carrying out of a contract awarded by the board of local improvements have the burden of overcoming the presumption in favor of the validity of the board's action by proving that the board exceeded its jurisdiction or that the contract was awarded arbitrarily or as the result of fraud or favoritism, and it is not sufficient to show that the contract was not awarded to the lowest bidder.

APPEAL from the Circuit Court of Kane county; the Hon. DUANE J. CARNES, Judge, presiding.

TOLMAN & REDFIELD, DEGOY B. ELLIS, and IRVING M. WESTERN, (ROBERT REDFIELD, and HENRY P. CHANDLER, of counsel,) for appellants.

RUSSELL & McNERNEY, and EUGENE CLIFFORD, for appellees.

Mr. JUSTICE HAND delivered the opinion of the court:

This was a bill in chancery filed by the Standard Paving Company, an Illinois corporation organized for the purpose of putting in street improvements, and William F. Hallett and four other persons, who were tax-payers in the city of Elgin and who owned real estate abutting on the improvement on the north part of Spring street, in said city, against the city of Elgin, its mayor, city clerk and city treasurer, and the McCarthy Improvement Company, to restrain said city of Elgin from entering into a contract for paving a part of North Spring street, in said city, under an award to said McCarthy Improvement Company, made by its board of local improvements on September 15, 1910, and to restrain its mayor and city clerk from executing said contract on behalf of the city, and its city treasurer from making any payments on account of any work done under said award. An answer and replication were filed and a hearing was had before the court, and at the close of the complainants' evidence, upon the motion of the defendants, a decree was entered dismissing the bill for want of equity, which decree of dismissal, upon appeal to the Appellate Court for the Second District, was affirmed as to the Standard Paving Company and reversed as to the other complainants and the case was remanded. Upon its re-instatement in the circuit court the bill was amended, and upon a rehearing in that court the bill was again dismissed for want

of equity, and the court having certified that the validity of a municipal ordinance was involved and that in the opinion of the court the public interests required that the case should be brought to this court by direct appeal, an appeal has been prosecuted to this court by the appellants, William F. Hallett and Mary K. Harrison.

Two grounds of reversal are urged in this court: First, that the ordinance which lies at the basis of the improvement is void because it was not published in accordance with the act of 1909, entitled "An act requiring cities, villages and incorporated towns to submit certain ordinances authorizing the issue of bonds, except to refund any existing bonded indebtedness, to the voters of any such city, village or incorporated town;" (Laws of 1909, p. 130;) and second, the action of the board of local improvements in awarding the contract to the McCarthy Improvement Company was illegal and void because said company was not the lowest responsible bidder at the awarding of the contract for the construction of said improvement.

Section 4 of the improvement ordinance provides that the cost of the improvement shall be paid by special assessment levied in accordance with the Local Improvement act, except the "sum of two thousand twenty-one and 24/100 dollars, ($2021.24,) estimated cost and expense of making and collecting the assessment," which amount shall be paid by general taxation; and section 6 of the ordinance provides for the issuing of bonds in anticipation of the second and succeeding installments of said assessment. The assessment was divided into ten installments, and it is clear from the terms of the ordinance that it was not contemplated that any part of the sum provided to be paid by general taxation,—that is, the sum which was to be used in paying the cost of making and collecting the assessment,— should be represented by a bond issue. We think it, therefore, apparent that the ordinance did not fall within the referendum act of 1909 unless it was necessary to submit

the question of issuing bonds in anticipation of the second and succeeding installments of the assessment to the voters of the city of Elgin. The act of 1909, relating to bond issues, was held in *City of Lawrenceville* v. *Hennessey,* 244 Ill. 464, not to apply to bonds issued against a special assessment, and that case was followed in *City of Nokomis* v. *Zepp,* 246 Ill. 159, and *City of Chicago* v. *Crozer,* 246 id. 511. It was not necessary to submit the question to the voters of the city of Elgin whether anticipation bonds for the second and subsequent installments of said assessment should issue. The first contention of the appellants must therefore be overruled.

It appears from the record that the estimated cost of the improvement was $58,500. The board of local improvements advertised for bids in accordance with section 76 of the Local Improvement act, and three bids were received. The Standard Paving Company bid $47,667.06, the White Construction Company $48,847.06 and the McCarthy Improvement Company $52,500, and accompanying each bid was a certified check for ten per cent of the amount of the bid. The McCarthy Improvement Company's bid was accepted although it was $4832.94 more than the bid of the Standard Paving Company and $3652.94 more than the bid of the White Construction Company.

Section 77 of the Local Improvement act confers power upon the board of local improvements to award contracts for the construction of local improvements, and the law in this State is well settled that the courts cannot interfere, in the absence of fraud, with the exercise of the official discretion of such board in awarding such contracts. (*Kelly* v. *City of Chicago,* 62 Ill. 279; *People* v. *Kent,* 160 id. 655; *Johnson* v. *Sanitary District,* 163 id. 285.) It is also held that the statutory requirement that contracts for public improvements shall be let to the lowest responsible bidder does not require the letting of a contract to the lowest bidder upon the ascertainment of his financial responsibility

only, but the term "responsible" includes the ability to respond by the discharge of the contractor's obligations in accordance with what may be expected or demanded under the terms of the contract, (*People* v. *Kent, supra,*) and when the board of local improvements has exercised its discretion in the award of a contract for a public improvement, such as was awarded to the McCarthy Improvement Company in this case, the presumption obtains that the action of such board was regular and lawful, and the presumption of the regularity and legality of the action of the board in an action like this can only be overcome by proof that the board acted without jurisdiction or fraudulently. *People* v. *Kent, supra; Johnson* v. *Sanitary District, supra.*

In *Kelly* v. *City of Chicago, supra,* the board of public works of the city of Chicago advertised for sealed bids for the construction of a new lake tunnel, estimated to cost $400,000. John McBean & Co. bid $330,396, John Kelly & Co. $336,648 and Steel & McMahon $340,866. The board awarded the contract to Steel & McMahon. John McBean & Co. took no action. Thereupon John Kelly & Co. filed a bill to restrain the board from entering into a contract with Steel & McMahon and to compel the board to award the contract to Kelly & Co. on the ground they were the lowest bidders and on the ground that they were tax-payers in the city of Chicago. The bill was dismissed for want of equity.

In *People* v. *Kent, supra,* a petition was filed in this court for a writ of *mandamus* to require the commissioner of public works of the city of Chicago to award a contract to the relator for paving one of the public streets of the city of Chicago on the ground that he was the lowest bidder for the construction of the improvement. The court denied the writ. On page 662 of the opinion it was said: "It appears that the defendant, after investigating the record made by the relator in doing similar work before, and the other matters referred to in his answer, determined

that the relator was not the lowest responsible bidder. He was vested with the exercise of official judgment and discretion, with which, in the absence of fraud, courts have no right to interfere. (*Kelly* v. *City of Chicago,* 62 Ill. 279; *People ex rel.* v. *Dental Examiners,* 110 id. 180; *People ex rel.* v. *Mayor,* 25 Wend. 680; *People ex rel.* v. *Council of Troy,* 78 N. Y. 33.) In this case there was neither favoritism nor fraud as a matter of fact, and none is to be inferred as a matter of law."

In *Johnson* v. *Sanitary District, supra,* a contract for work in the sanitary district was awarded to Griffiths & McDermott for $1,286,219, which the appellants by their bid had offered to do for $1,141,107.94, and the appellants filed a bill for a mandatory injunction. The bill was dismissed, and on page 287 of the opinion the court said: "When the statute vests a discretion in a municipal body to determine a question, it is not the province of the courts to determine and control that discretion. The mandatory injunction applied for to compel the letting of the contract to appellants is in the nature of a *mandamus,* and is an attempt to control a discretion that is judicial in its nature. The duty of examining the proposals, determining the responsibility and awarding the contract is judicial in its nature and character, and the awarding the contract is a judicial act, which is not within the province of the courts to control by *mandamus* or mandatory injunction. * * * Nor can the courts, in the absence of fraud, restrain the trustees from entering into such contract as they may award to the bidder.—*Kelly* v. *City of Chicago,* 62 Ill. 279."

Section 77 of the Local Improvement act, in part, reads as follows: "Said board of local improvements may reject any and all proposals or bids, should they deem it best for the public good; and if they shall be of the opinion that a combination exists between contractors, either to limit the number of bidders or to increase the contract price, and that the lowest bid is made in pursuance thereof, it shall

be their duty to do so; and said board may reject the bid of any party who has been delinquent or unfaithful in any former contract with the municipality, and shall reject all proposals or bids other than the lowest regular proposal or bid of any responsible bidder, and may award the contract for said work or improvement to the lowest responsible bidder at the prices named in his bid, which award shall be recorded in the record of its proceedings." (Hurd's Stat. 1909, p. 473.)

The board of local improvements advertised for bids, and during the controversy over the awarding of the contract for the construction of the improvement in question considerable time was consumed. The first bids were rejected, and after the second bids were received the ordinance was repealed and the one under which the bids now under consideration were made was passed. The members of the board of local improvements went to Chicago and other cities to investigate the responsibility and experience of the persons making bids, and similar pavements which were then in the streets of those cities were examined. They employed an expert to analyze the samples which were submitted by the bidders with their bids, and finally, after what appears to have been a very careful and painstaking investigation of the responsibility and experience of the bidders and the character of the improvement which they offered the city, and which were claimed to fully comply with the specifications found in the improvement ordinance, the bid of the McCarthy Improvement Company was accepted by the board of local improvements. There is no evidence in this record which in the remotest degree tends to support the allegations of fraud, conspiracy, etc., found in the bill, neither does the evidence tend to show extortion as against the tax-payer or property owner or favoritism toward any bidder. The burden of proof was upon the complainants in the bill to overcome by proof

the presumption of law which obtains in favor of the good faith of the board of local improvements in awarding the contract, by showing that they exceeded their jurisdiction, or their action in awarding the contract was vitiated by fraud, or that the award was arbitrarily made or was the result of favoritism. The most that can be said is, the evidence shows that the award was not made to the lowest bidder. In view, however, of the testimony in this record which shows that the discretion exercised by the board of local improvements in awarding the contract was fairly and honestly exercised, the award cannot be overturned by reason of the fact that the McCarthy Improvement Company was not the lowest bidder.

We are satisfied, from a careful examination of this record, that the decree of the circuit court was fully justified and that it should be affirmed.

The decree of the circuit court will be affirmed.

*Decree affirmed.*