(No. 76166.—

COURT STREET STEAK HOUSE, INC., Appellee, v. THE COUNTY OF TAZEWELL, Appellant.

*Opinion filed September 22 , 1994.—Rehearing denied December 5, 1994.*

160

HEIPLE and FREEMAN, JJ., concurring.

Erik I. Blanc, State's Attorney, and Stewart J. Umholtz, Assistant State's Attorney, of Pekin, for appellant.

Gerald L. Hall, of Pekin, for appellee.

James E. Ryan, State's Attorney, and Barbara A. Preiner, Assistant State's Attorney, of Wheaton, for *amicus curiae* Du Page County.

JUSTICE NICKELS delivered the opinion of the court:

In 1991, defendant, Tazewell County (the County), solicited bids for the award of a food service contract. The successful bidder would supply food to the inmates of the Tazewell County jail. The County received two bids for the contract, one from plaintiff, Court Street Steak House, Inc., and one from the Tazewell County Resource Center (the Resource Center). Although plaintiff submitted the lower bid, the County awarded the contract to the Resource Center. Plaintiff then filed an action in the circuit court seeking a writ of *mandamus* to compel the County to award it the contract. The County moved to dismiss, and the circuit court dismissed the action. The appellate court reversed the circuit court and reinstated the action for *mandamus*. (249 Ill. App. 3d 918.) We granted the County's petition for leave to appeal (134 Ill. 2d R. 315) and now reverse the appellate court.

## FACTS

On December 12, 1991, Tazewell County received two bids for its prisoner food service contract. Plaintiff submitted a bid of $6.22 per day/per inmate, and the Resource Center submitted a bid of $6.29 per day/per

inmate. Plaintiff's principal business is the operation of a restaurant, and its principal place of business is located in Tazewell County. The Resource Center is a not-for-profit organization which provides food service training for the mentally handicapped. At the time the County solicited bids for the contract, the Resource Center had provided food service to the county jail for approximately seven years.

In its invitation to bid, the County explicitly reserved the right to reject any and all bids. On December 23, 1991, the county board rejected the bid submitted by plaintiff and awarded the food service contract to the Resource Center. The board awarded the contract to the Resource Center, instead of to plaintiff, for two reasons. First, the board stated that it was pleased with the Resource Center's past performance. Second, approximately 60% of the Resource Center's food service training program for the mentally handicapped was based on the county jail food service contract.

On January 9, 1992, plaintiff filed a complaint for an injunction, which was denied by the circuit court. The circuit court denied injunctive relief after finding that plaintiff should seek *mandamus* relief instead. Plaintiff did not pursue injunctive relief further, and the Resource Center began providing food service for the county jail on January 18, 1992. The contractual period started on January 18, 1992, and terminated on December 1, 1992, with the County retaining the option to renew the contract for one year. On April 14, 1992, plaintiff filed a petition in the circuit court for writ of *mandamus*.

In the petition for *mandamus*, plaintiff alleged that the County had failed to award the contract to the "lowest responsible bidder" in violation of section 5—1022 of the Counties Code (Ill. Rev. Stat. 1991, ch. 34, par. 5—1022). The circuit court ruled that it could

not review the County's determination of the lowest responsible bidder absent an allegation of fraud. It therefore dismissed the petition. The appellate court reversed, holding that *mandamus* will also issue where manifest injustice or a palpable abuse of discretion is shown. It then held that, if the County had violated the statute, plaintiff would be entitled to damages. On review, we address the following issues: (1) whether the County's determination of the lowest responsible bidder is subject to *mandamus*, and (2) whether lost profits are available to an unsuccessful bidder as a remedy for violation of the statute.

I. Competitive Bidding Statute

Section 5—1022 is commonly known as the competitive bidding statute. The pertinent portion of section 5—1022 that was in effect at the time of the bidding provided:

"Competitive bids: Any purchase by a county with fewer than 2,000,000 inhabitants of services, materials, equipment or supplies in excess of $10,000, other than professional services, shall be contracted for in one of the following ways:

(1) by a contract let to the *lowest responsible bidder* after advertising for bids in a newspaper published within the county or, if no newspaper is published within the county, then a newspaper having general circulation within the county; or

(2) by a contract let without advertising for bids in the case of an emergency if authorized by the county board.

In determining the lowest responsible bidder, the county board shall take into consideration the qualities of the articles supplied, their conformity with the specifications, their suitability to the requirements of the county and delivery terms." (Emphasis added.) (Ill. Rev. Stat. 1991, ch. 34, par. 5—1022.)

This statute has since been amended, but these amendments are not relevant here. See 55 ILCS 5/5—1022 (West Supp. 1993).

The County initially argues that section 5—1022 does not apply in this instance and that the County was not required to solicit competitive bids at all. The County argues that the Illinois Purchasing Act (30 ILCS 505/1 *et seq.* (West 1992)) applies to these facts. The Illinois Purchasing Act provides that "[a]ny State agency may buy products and services, without advertising or using competitive procedures, from any qualified not-for-profit agency for the severely handicapped ***." (30 ILCS 505/7—1 (West 1992).) We note that the County did not raise the Illinois Purchasing Act in the circuit or appellate court and therefore that argument is waived.

In any event, the Illinois Purchasing Act would not apply to the instant case. The Act applies only to State agencies, and as defined by the Act, the phrase "State agency" specifically excludes "units of local government." (30 ILCS 505/3 (West 1992).) Counties are recognized as units of local government. (Ill. Const. 1970, art. VII, § 1.) Accordingly, the Illinois Purchasing Act does not apply to the instant case and section 5—1022 does.

The County also suggests that its reservation of the right to reject any and all bids justifies its failure to award the contract to plaintiff. Because section 5—1022 applies to this contract, the County must comply with it. The statute does not give a county the authority to arbitrarily reject any bidder it chooses. Indeed, such a reservation of right would give counties absolute discretion in awarding a contract and make the lowest responsible bidder requirement meaningless. We note that this is not a situation where the County determined that all bids submitted were too high and therefore sought to reopen the bidding.

Accordingly, we find that the County was required to solicit competitive bids and award the contract to the

lowest responsible bidder, pursuant to section 5—1022. The phrase "lowest responsible bidder" appears in several statutes and has been previously interpreted by Illinois courts. It does not require a public body to award a contract to the lowest bidder (*S.N. Nielsen Co. v. Public Building Comm'n* (1980), 81 Ill. 2d 290, 299), and a public body exercises a great deal of discretion in determining the lowest responsible bidder (see, *e.g.*, *Hallett v. City of Elgin* (1912), 254 Ill. 343). The County argues that this discretion is so broad that a court will not interfere unless the board's determination is fraudulent or beyond the board's authority. (*McGovern v. City of Chicago* (1917), 281 Ill. 264; *Kelly v. City of Chicago* (1871), 62 Ill. 279.) According to the County, neither was alleged in the petition for *mandamus* and therefore the trial court properly dismissed the petition.

We find that the discretion to award a public contract is not so broad as the County suggests. Competitive bidding statutes are enacted "for the purpose of inviting competition, to guard against favoritism, improvidence, extravagance, fraud and corruption and to secure the best work or supplies at the lowest price practicable." (10 E. McQuillin, Municipal Corporations § 29.29, at 375 (3d ed. 1966); see also *Compass Health Care Plans v. Board of Education* (1992), 246 Ill. App. 3d 746, 751; *O'Hare Express, Inc. v. City of Chicago* (1992), 235 Ill. App. 3d 202, 208.) Given this purpose, *mandamus* will issue if a plaintiff alleges and proves fraud, lack of authority, unfair dealing, favoritism, or similar arbitrary conduct by a county. *Nielsen*, 81 Ill. 2d at 299; *Hallett*, 254 Ill. at 348-50.

We therefore examine the well-pleaded facts and allegations contained in the petition for *mandamus*. For the purpose of this review, we accept all well-pleaded facts and allegations in the petition as true. (*Ziemba v. Mierzwa* (1991), 142 Ill. 2d 42, 46-47.) In the petition,

plaintiff alleged that it was the low bidder for the contract, that nothing in the board record indicated that it was not the lowest responsible bidder, and that the board had no discretion to award the contract to any other bidder. Plaintiff incorporated a record of the relevant board and committee minutes into the petition for *mandamus*. This record shows that the board awarded the contract to the Resource Center because of past performance and because of the Resource Center's food service training program for the mentally handicapped. Plaintiff suggests that these are not proper factors for the board to consider in determining the lowest responsible bidder. According to plaintiff, the board's concern for the Resource Center's food service training program, as alleged in the petition, constitutes arbitrary favoritism.

The appellate court agreed with plaintiff, finding that the board had not applied the statutory criteria in determining the lowest responsible bidder. These criteria include: quality of the articles to be supplied, conformity with bid specifications, suitability to the requirements of the county, and delivery terms. (Ill. Rev. Stat. 1991, ch. 34, par. 5—1022.) We disagree with the appellate court's finding. The appellate court construed the phrase "suitability to the requirements of the county" too narrowly. A county solicits bids on many different types of contracts with many different factors affecting each purchasing decision. We find that, under this criterion, the County can take into account reasonable benefits to the County arising from each bid.

In this instance, according to the parties, the seven-cent difference in the bids translated roughly into a difference of $1,400 in one year. Plaintiff's bid reflected its price for providing the County with the benefit of food service. The Resource Center's bid, in addition to providing food service, benefitted the County by providing food service training for the mentally handicapped.

When considering the well-pleaded facts, the appellate court found that the petition suggested a palpable abuse of discretion and a manifestly unjust exercise of discretionary power. (249 Ill. App. 3d at 921.) Although we note that the board does not have unbridled discretion to award a public contract, we cannot agree with the appellate court in this instance. The board concluded that the additional benefit provided by the Resource Center made it more suitable to the requirements of the County than plaintiff's bid. This additional benefit was a proper factor for the board to consider, and, in this instance, the board could reasonably conclude that it outweighed the difference in price.

This court's decision in *Nielsen*, 81 Ill. 2d 290, supports this conclusion. In *Nielsen*, the plaintiff brought a *mandamus* action against the Public Building Commission for the award of a building contract. The Public Building Commission Act, like the statute involved here, provided that building contracts were to be awarded to the lowest responsible bidder. In *Nielsen*, this court held that the Commission could compare the affirmative action efforts of the bidders in determining the lowest responsible bidder.

The court first noted that two important factors in determining the lowest responsible bidder are financial responsibility and ability to perform. The court then held that social responsibility should also be a concern in awarding public contracts. In support of this proposition, the *Nielsen* court stated:

" 'In proper circumstances a contract may be awarded to one who is not the lowest bidder, where this is done in the public interest, in the exercise of discretionary power granted under the laws, without fraud, unfair dealing, or favoritism, and where there is a sound and reasonable basis for the award as made.' " (*Nielsen*, 81 Ill. 2d at 299, quoting 10 E. McQuillin, Municipal Corporations § 29.73.10, at 510 (3d ed. 1966).)

Food service training for the mentally handicapped, like the affirmative action efforts in *Nielsen,* is a reasonable basis on which to award a public contact.

The appellate court, in finding an allegation of favoritism, relied primarily on *Cardinal Glass Co. v. Board of Education of Mendota Community Consolidated School District No. 289* (1983), 113 Ill. App. 3d 442. In *Cardinal Glass,* the plaintiff brought a *mandamus* action against the board of education to compel the board to award it a window-replacement contract on a school building. The School Code, again like the statute involved here, required that public contracts be awarded to the lowest responsible bidder. The court in that case found that the facts alleged in the complaint, taken as true, indicated that the sole reason the board did not award the contract to plaintiff was because the board wished to keep the money in the community. The court then found that such conduct would constitute clear favoritism, in violation of the statute.

We find the instant case distinguishable. A desire to keep money in the community indicates prejudice, not reasoned decisionmaking. Thus, in the instant case, if the board had relied only on the past performance of the Resource Center in making its determination, this reliance might suggest favoritism. Support for the mentally handicapped training program, however, shows a proper concern for the welfare of the County. The board's determination therefore does not indicate an arbitrary preference for one bidder over the other.

## II. Lost Profits

Even if the petition had alleged favoritism, plaintiff would not be entitled to relief. At this point in time, the contract period has expired and therefore *mandamus* relief is unavailable. In the petition for *mandamus,* plaintiff seeks lost profits in addition to *mandamus* relief. The appellate court held that plaintiff could re-

cover lost profits if plaintiff proved a violation of the statute in the circuit court.

In reaching this conclusion, the appellate court again relied on *Cardinal Glass*, 113 Ill. App. 3d 442. In *Cardinal Glass*, the court held that an unsuccessful bidder for a public contract has standing to sue for injunctive and *mandamus* relief. The court reasoned that unsuccessful bidders could more effectively ensure compliance with the statute than could taxpayers because bidders have a greater interest at stake than do taxpayers. The court therefore concluded that allowing an unsuccessful bidder to sue would promote tax savings. In *Cardinal Glass*, however, the plaintiff did not seek lost profits.

On the issue of lost profits, the overwhelming weight of authority is against allowing recovery of such damages. (See generally 10 E. McQuillin, Municipal Corporations § 29.86, at 548-49 (3d ed. 1966); Public Contracts: Low Bidder's Monetary Relief Against State or Local Agency for Nonaward of Contract, 65 A.L.R.4th 93 (1988).) Courts from other jurisdictions have generally held that lost profits are not allowed to an unsuccessful bidder for a public contract. (See, *e.g.*, *Owen of Georgia, Inc. v. Shelby County* (1981), 648 F.2d 1084; *Conway Corp. v. Construction Engineers, Inc.* (1989), 300 Ark. 225, 782 S.W.2d 36; *Neilsen & Co. v. Cassia & Twin Falls County Joint Class A School District 151* (1982), 103 Idaho 317, 647 P.2d 773; *Sutter Brothers Construction Co. v. City of Leavenworth* (1985), 238 Kan. 85, 708 P.2d 190; *Telephone Associates v. St. Louis County Board* (Minn. 1985), 364 N.W.2d 378; *M.A. Stephen Construction Co. v. Borough of Rumson* (1973), 125 N.J. Super. 67, 308 A.2d 380; *Aqua-Tech, Inc. v. Como Lake Protection & Rehabilitation District* (1976), 71 Wis. 2d 541, 239 N.W.2d 25; *City of Scottsdale v. Deem* (1976), 27 Ariz. App. 480, 556 P.2d 328; *Stride Contracting Corp. v.*

*Board of Contract & Supply* (1992), 181 A.D.2d 876, 581 N.Y.S.2d 446.) Also, our appellate court has found that lost profits are not available. (*State Mechanical Contractors, Inc. v. Village of Pleasant Hill* (1985), 132 Ill. App. 3d 1027; *Hassett Storage Warehouse, Inc. v. Board of Election Commissioners* (1979), 69 Ill. App. 3d 972; *Premier Electrical Construction Co. v. Board of Education* (1979), 70 Ill. App. 3d 866; *Beaver Glass & Mirror Co. v. Board of Education of Rockford School District No. 205* (1978), 59 Ill. App. 3d 880.) Plaintiff cites no Illinois cases where lost profits were awarded.

The appellate court in *Beaver Glass* stated the general rationale for not allowing recovery of lost profits:

"It is evident that the statute was enacted for the benefit and protection of taxpayers residing within a school district, and not for the benefit of contractors who are unsuccessful in bidding on school contracts. The statutory purpose would not be served by construing the statute as creating a right in unsuccessful bidders to recover from the school district for the profits they would have made had they been awarded the contract. If the statute were held to create such a remedy, then taxpayers, whom the statute was designed to protect, would be injured twice whenever the school board failed to award a contract to the lowest responsible bidder: the first time, through the unjustified additional expenditure of funds on the awarded contract, and then, a second time through the necessity for paying a judgment for lost profits to the aggrieved low bidder. [Citation.] It is therefore obvious that section 10—20.21 of The School Code was never intended to create the private remedy that the plaintiffs seek by this action." (Emphasis omitted.) (*Beaver Glass*, 59 Ill. App. 3d at 884.)

We approve of this reasoning as it applies to the loss of profits from a public contract, and to the extent that *Cardinal Glass* suggests otherwise, its holding is rejected. Accordingly, we hold that an action for lost profits is not an appropriate remedy for violation of this statute.

For the foregoing reasons, the judgment of the

appellate court is reversed and the judgment of the circuit court is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*

JUSTICE HEIPLE, concurring:

While I agree with the judgment in this case, I cannot accept the majority's analysis. In the second half of the opinion, the majority correctly finds that "the contract period has expired and therefore *mandamus* relief is unavailable." (163 Ill. 2d at 168.) Prior to this holding, however, the majority performs a gratuitous and flawed review of the competitive bidding statute and finds that a county board can properly consider support for a mentally handicapped training program in deciding to whom a contract should be awarded. Because the majority should never have reached the issue of the propriety of the County's justifications for awarding the contract, and because the majority's analysis of the competitive bidding statute is patently faulty, I write separately.

In 1991, defendant, Tazewell County (the County), solicited bids for the award of a food service contract. The County received two bids for the contract, one from plaintiff, Court Street Steak House, Inc., and one from the Tazewell County Resource Center (the Resource Center). Plaintiff submitted a bid of $6.22 per day/per inmate, and the Resource Center submitted a bid of $6.29 per day/per inmate.

On December 23, 1991, the county board rejected the bid submitted by plaintiff and awarded the food service contract to the Resource Center. The board based its decision on: (1) the Resource Center's past performance, and (2) the fact that approximately 60% of the Resource Center's food service training program for the mentally handicapped was based on the county jail food contract.

The contract for providing food service for the county jail began on January 18, 1992. The contract terminated on December 1, 1992.

On April 14, 1992, months after the contract period had expired, plaintiff filed a petition for *mandamus*. In its petition, plaintiff alleged that the County had failed to award the contract to the "lowest responsible bidder," in violation of section 5—1022 of the Counties Code (Ill. Rev. Stat. 1991, ch. 34, par. 5—1022). The pertinent portion of section 5—1022 that was in effect at the time stated:

> "Competitive bids: Any purchase by a county with fewer than 2,000,000 inhabitants of services, materials, equipment or supplies in excess of $10,000, other than professional services, shall be contracted for in one of the following ways:
>
> (1) by a contract let to the *lowest responsible bidder* ***.
>
> ***
>
> In determining the lowest responsible bidder, the county board shall take into consideration the qualities of the articles supplied, their conformity with the specifications, their suitability to the requirements of the county and the delivery terms." (Emphasis added.) Ill. Rev. Stat. 1991, ch. 34, par. 5—1002.

The circuit court ruled that it could not review the County's determination of the lowest responsible bidder absent an allegation of fraud. Therefore, the circuit court dismissed the petition.

The appellate court reversed, holding that *mandamus* can also be issued on a showing of manifest injustice or a palpable abuse of discretion. (249 Ill. App. 3d at 921.) That court found that the petition suggested a palpable abuse of discretion and a manifestly unjust exercise of discretionary power. (249 Ill. App. 3d at 921.) It further held that if the County is shown to have violated the statute, plaintiff would be entitled to damages.

On the County's appeal to this court, a majority of this court reverses the appellate court. After a review of the competitive bidding statute, the majority finds that the board's determination was not an arbitrary preference for one bidder over the other because food service training for the mentally handicapped is a reasonable basis on which to award a public contract. 163 Ill. 2d at 167-68.

Subsequently, however, the majority goes on to hold that *mandamus* could not issue in this case—no matter what the plaintiff alleged in its petition. (163 Ill. 2d at 168-69.) As the majority correctly points out, "[a]t this point in time, the contract period has expired and therefore *mandamus* relief is unavailable." 163 Ill. 2d at 168.

If this is so, why then has the majority reached the substantive arguments? This case should have been dismissed as moot because, at the time the suit was filed, the relief sought was no longer available. In analyzing and discussing the substantive issues, the majority has, in essence, issued an unnecessary advisory opinion regarding the interpretation of the competitive bidding statute. The issuance of advisory opinions is not the function of this court. See *Barth v. Reagan* (1990), 139 Ill. 2d 399, 421 (courts of review "will not decide moot or abstract questions, render advisory opinions, or consider issues that are not essential to the disposition of the cause or where the result will not be affected regardless of how the issues are decided").

Even more disturbing than the fact that today's opinion is advisory in nature is the fact that the majority's analysis of the competitive bidding statute is seriously flawed. I can only surmise that the majority has turned a blind eye to the clear language of the statute, in order to do what it feels is the "right thing."

The competitive bidding statute unequivocally states:

"In determining the lowest responsible bidder, the county board shall take into consideration the qualities of the articles supplied, their conformity with the specifications, their suitability to the requirements of the county and the delivery terms." (Ill. Rev. Stat. 1991, ch. 34, par. 5—1022.)

An objective reading of this section reveals that the focus of this entire section is on the phrase "articles supplied." The legislature has not introduced any external considerations, nor should this court look for any. That is, all modifying clauses should be interpreted in reference to the phrase "articles supplied."

Accordingly, a county board is to take into consideration: (1) the qualities of the "articles supplied"; (2) the conformity of the "articles supplied" with the specifications; (3) the suitability of the "articles supplied" to the requirements of the county; and (4) the delivery terms of the "articles supplied." Thus, under a proper reading of the competitive bidding statute, there is no room for the county board to take into consideration its own, albeit understandable, social policy interests.

The majority, however, has ignored the express language of the statute and finds that under the suitability of the articles supplied criterion, the County may take into account reasonable benefits to the County arising from each bid. Extrapolating from there, the majority finds that the additional benefit provided by the Resource Center—in providing food service training for the mentally handicapped—made it more suitable to the requirements of the County. The majority finds that this additional benefit was a proper factor for the board to consider, and concludes that it was not an abuse of discretion for the board to have granted the contract to the Resource Center.

The majority's reading of the statute, however, does not comport with its text. As noted above, the suitability criterion concerns itself only with the specific articles

supplied. That is, the only question to be asked is whether the food supplied is suitable for the requirements of the county jail. Other potential externalities simply do not and should not enter into the equation. Thus, in this case, whether the food was prepared by persons who are handicapped or not is completely irrelevant.

In addition to the majority's disregard for the clear language of the statute, the majority has also failed to give meaning to the purpose of the competitive bidding statute. As the majority itself stated, competitive bidding statutes are enacted " 'for the purpose of inviting competition, to guard against favoritism, improvidence, extravagance, fraud and corruption and to secure the best work or supplies at the lowest price practicable.' [Citations.]" (163 Ill. 2d at 165.) Competitive bidding statutes are not the vehicles for local governments to implement their public policy agendas, however laudable. Nonetheless, such a vehicle is exactly what the majority has now provided. The opening provided by this advisory opinion will lend itself to exactly the type of creative bid manipulation that the statute was designed to prevent.

Finally, permit me to suggest that if the legislature had wanted county boards to consider factors other than the ones listed, it could have expressly so provided. This court should not—under the guise of statutory construction—act as a superlegislature and rewrite the statute.

JUSTICE FREEMAN, also concurring:

I concur in the judgment of this case, but like Justice Heiple, I disagree with the majority's analysis.

I agree with the majority that the petition for *mandamus* was properly dismissed because plaintiff was no longer entitled to that particular form of relief or entitled to monetary damages. I am unpersuaded, however, that the County's determination of the "lowest

responsible bidder," as alleged, did not suggest an arbitrary exercise of discretion.

According to the statutory criteria, the County, in determining the lowest responsible bidder, shall take into consideration the *supplied articles'* "suitability to the requirements of the county." (Ill. Rev. Stat. 1991, ch. 34, par. 5—1022(2).) The county board's minutes reflect that it awarded the contract to the Resource Center because of the Resource Center's past performance and food service training program for the mentally handicapped. On its face, this determination does not indicate the consideration contemplated under the statute. Furthermore, I am unconvinced by the majority's reasoning that "reasonable benefits to the County arising from [the contract] bid" are properly considered as an aspect of the food service's suitability. The majority's reasoning appears to stretch the statutory criteria too far so as to conclude that no favoritism was indicated.

Additionally, the distinction made by the majority between this case and *Cardinal Glass Co.* is not substantially meaningful. I cannot accept that a preference for local contractors, and their services, suggests favoritism any more than a preference based on a contractor's past performance and the operation of a social program.

Considering the obligation to construe pleadings liberally, based on the factual allegations and reasonable inferences drawn therefrom, the allegations here suggested some degree of favoritism.