FIFTH DIVISION
 May 9, 1997
 
 

 

No. 1-96-2927

BEST BUS JOINT VENTURE, LAIDLAW ) 
TRANSIT, INC., WILLETT MOTOR COACH ) 
COMPANY, ROBINSON BUS SERVICE, INC., ) APPEAL FROM THE
LATINO EXPRESS, INC., EXPRESS LATINO, ) CIRCUIT COURT OF
INC., and B&B COACH, ) COOK COUNTY.
 )
 )
 Plaintiffs-Appellants, )
 v. ) 
 )
THE BOARD OF EDUCATION OF THE CITY )
OF CHICAGO, and RR JOINT VENTURE, )
 )
 Defendants-Appellees )
 )
(Alltown Bus Service, Inc., Art's ) THE HONORABLE
Transportation, Inc., Jewel's ) JOHN MADDEN,
Transportation, Inc., Paige Bus ) JUDGE PRESIDING.
Enterprises, Paige Transportation, )
Inc., and White Transportation, )
Intervenors and Defendants-Appellees). )

 JUSTICE SOUTH delivered the opinion of the court:

 Plaintiffs, Best Bus Joint Venture (Best Bus), Laidlaw
Transit, Inc. (Laidlaw), Willett Motor Coach Co. (Willett),
Robinson Bus Service, Inc. (Robinson), Express Latino, Inc.
(Express), Latino Express, Inc. (Latino), and B&B Coach (B&B) 
challenged the Board of Education of the City of Chicago's (the
Board's) award of bus contracts for the 1996-97 through 1998-99
school years and sought permanent injunctive relief. At issue
was the Board's application of a 2% local business preference (2%
LBP) to Best Bus; the validity of such a preference; and the
Board's award of bus contracts.
 In count I, plaintiffs sought an order compelling the Board
to apply the 2% LBP based upon the entity plaintiffs claimed
would actually provide service (Willett), rather than the entity
which participated in the bid (Laidlaw). In the alternative, in
count II, plaintiffs sought to invalidate the 2% LBP. In count
VII, plaintiffs claimed that the Board's action must be reversed
as "palpable error, amounting to constructive fraud." In count
VIII, plaintiffs claimed that Board Rule 5.5 violates due process
and equal protection.
 Plaintiffs filed a complaint only three weeks before the
start of the school year. They sought a preliminary injunction,
and a hearing was held by the trial court on August 12, 14 and
16, 1996. Both the Board and codefendant RR Joint Venture (RR)
raised the affirmative defense of estoppel. 
 The parties entered into a number of stipulations. The
parties also agreed to the authenticity of a number of documents. 
The stipulations and documents are as follows.
 On January 24, 1996, the Board adopted Rule 5.5,
establishing a 2% LBP for contracts over $10,000. Pursuant to
Board Rule 5.5, a company must meet the following four
requirements in order to qualify for the 2% LBP: (1) be
authorized to do business and doing business in Chicago; (2) be
located in the City of Chicago; (3) have the majority of its
regular full-time work force in Chicago; and (4) be subject to
City of Chicago taxes. 
 In March 1996, the Board let out for bid contracts for
provision of school bus services for the 1996-97 through 1998-99
school years, bid number 96-130050. The Board notified
prospective bidders of the bid period and pre-bid meeting by a
letter dated March 12, 1996. All plaintiffs and defendants
present at the preliminary injunction hearing received the
letter. Bid specifications were made available to the public on
March 15, 1996. 
 The pre-bid meeting was held on March 21, 1996. 
Representatives from all of the plaintiffs and defendants present
at the preliminary injunction hearing attended the March 21,
1996, pre-bid meeting. 
 A list of revisions and additions from the previous contract
was made available to the public by the time of the pre-bid
meeting. The list of revisions and additions noted the 2% LBP on
page 9 of the contract. The terms and conditions of the 2% LBP
were described during the March 21, 1996, pre-bid meeting and
were set forth on page 9 of bid number 96-130050. The terms and
conditions of the 2% LBP were set forth in the bid prepared and
proposed on behalf of Best Bus. 
 Best Bus submitted a bid to provide services to transport
students for the Board. Laidlaw was a member of Best Bus, but
Willett was not. Laidlaw was not a local company as defined in
the bidding specifications. As applied by the Board, Best Bus
was not qualified as local under Board Rule 5.5 and the bids
specifications because the majority of Laidlaw's employees work
outside Chicago and, therefore, the majority of employees of the
venturers in the joint venture also work outside Chicago.
 At the meeting of the Board on July 24, 1996, the bus
service contracts were awarded. Although Best Bus was the lowest
bidder for type I buses, when the 2% LBP was considered, RR
became the low bidder for these buses and received the award.
 Diane Minor, chief purchasing officer in the Chicago public
school system, testified that when she became the Board's chief
purchasing officer she brought with her knowledge regarding the
city's use, application of and experience with a 2% LBP in its
competitive bidding process, and she wished to apply that
knowledge and those benefits to purchasing for the Board. Minor
testified that a 2% LBP had been used by the city in evaluating
who was the lowest responsible bidder in procurement of
contracts. In her experience, the 2% LBP had an impact on the
ability of local businesses to compete because it provided local
businesses with a more level playing field in competing with
suburban businesses that had lower operating or fixed costs as a
result of being located outside the City of Chicago. 
 Minor testified that the city did undertake a study to
quantify the allotted extra costs that it determined were
associated with doing business in the city and it arrived at the
2% amount as a balancing factor. She believed that the 2% LBP
was a success as used by the city, and it was her intent to
obtain the same success for the Board. In Minor's experience,
the 2% LBP allowed local companies to bid successfully and
eventually, in some cases, actually bid lower than the nonlocal
companies. 
 Minor relied upon the knowledge that she had from working
with the 2% LBP while employed by the city. She did not hold any
public hearings prior to presenting it to the Board. The Board
did make the rule available for public commentary, but Minor did
not recall any public commentary on the rule. The Board was
familiar with the requirements of Rule 5.5 and its intended
purpose at the time the Board voted on it. Rule 5.5 was
presented to the Board and passed unanimously. 
 Minor testified that the four requirements of the 2% LBP
were designed to improve education indirectly by improving the
local communities. Companies located in the City of Chicago pay
real estate taxes that go to support the public school system
directly in terms of monies that go to education. Employment of
city residents would lead to children who are better fed, clothed
and housed and such children are better students. 
 Minor first became familiar with Best Bus and its members
in July 1996, while reviewing all Board reports submitted for
recommendation of the award of bus contracts. She was familiar
with the provision of the Best Bus Joint Venture agreement, which
stated that Laidlaw may assign its responsibilities and duties
under the agreement. She asked her staff whether it was aware of
any assignment by Laidlaw. Minor's staff was unsure at that
point. In any event, she considered the assignment provision
irrelevant because the bid documents that she had and the
information presented in the bid showed Laidlaw as the bidding
partner and a member of the Best Bus Joint Venture. She agreed
that if Willett had been the bidding member of Best Bus rather
than Laidlaw, Best Bus would have qualified for the 2% LBP. 
 Minor testified with regard to assignment that page 7 of
the general conditions on the bid specifications requires that
any assignee of rights under the contract file written notice of
that assignment with the Board of Education. She testified that
she did not receive any written notice of the assignment from
Best Bus Joint Venture or Laidlaw. Minor testified that general
conditions of the bid also prohibit delegation of performance
without prior written consent of the Board. She testified that
the Board never provided written consent to either Best Bus or
Laidlaw to allow Willett to perform. 
 The Best Bus' bid submission indicated that Laidlaw was a
member of the joint venture, not Willett. Minor indicated that,
if Best Bus had called and told her that the documents contained
a mistake and that Willett was actually a member, she would have
been unable to consider that information in evaluating the bid. 
She was required to evaluate the bids based on the information
submitted in the bid. Prior to the lawsuit filed by Best Bus on
July 25, 1996, no one from Laidlaw, Willett or Best Bus
challenged the validity of the 2% LBP. They only challenged
whether or not it should be applied to Best Bus. 
 Francisco DuPrey, director of student services of the
Chicago Board of Education, testified that the assignment of bus
routes takes approximately four to six weeks. The bureau of
student services did not run an alternative routing process based
on the pending lawsuit because this would have taken away from
its ability to complete the initial routing process. 
 DuPrey testified that the Board transports approximately
50,000 students and that manipulating data in order to design
routes is a cumbersome process. If the preliminary injunction
were allowed, the bureau of student transportation would have to
go back and begin the process from day one, including inspecting
the Best Bus buses. He did not believe this could be done before
school started since the bureau already had inspections scheduled
through the end of August at the time of the hearing. 
 McNair Grant, director of the bureau of purchasing,
testified that he was responsible for administering the 2% LBP
for contracts adopted by the Board. He explained the bid
specifications, including Rule 5.5, at the March 21 pre-bid
meeting. After the pre-bid meeting, Grant was approached by
Clifton Hudson, whom he recognized as representing Willett. 
Hudson asked him if Best Bus would be okay under this new rule. 
Grant told him to just make sure that he submitted all the
documents. Grant's emphasis on supplying the documents was to
enable the Board to evaluate whether or not Hudson's joint
venture was a local business. Grant stated that he would not
promise Hudson that he would be considered a local business and
that he did not indicate to Hudson that it was his opinion that
Best Bus would be a local business. He stated that Hudson did
not identify to which company he was referring, did not tell him
he was inquiring about the locality of Laidlaw, and did not tell
Grant that Laidlaw would be a member of Best Bus. 
 Grant did not have further contact with Hudson until the
middle of July, at which time he requested additional information
on Laidlaw to determine its eligibility as a local business. He
called Hudson because Hudson was identified on the bid document
as the manager of Best Bus Joint Venture. Grant asked Hudson to
provide disclosure-of-ownership forms. The Board requested a Dun
& Bradstreet report, which indicated that Laidlaw had 80,000
employees with the majority of their work force located outside
the City of Chicago. 
 The Board did not as a regular matter of course allow
parties to delegate performance of any obligations under
contracts to wholly owned subsidiaries without prior written
consent of the Board. The issue of an assignment to another
entity had never previously impacted the question of whether
there would be an award based on the 2% LBP because Rule 5.5 did
not apply to those prior contracts. 
 Clifton Hudson, the president of Willett Motor Coach
Company, testified that Best Bus Joint Venture had contracts with
the Board before and after the purchase of Willett by Laidlaw. 
He believed that the joint ventures previously showed Laidlaw as
one of the joint venture partners subsequent to the merger and
that contract documents indicated at those times that Laidlaw
might or would assign performance to Willett. In each of those
cases, an assignment was made, but it was not done in writing,
and no notice was given to the Board of the actual fact of
assignment. Hudson testified that the Board never objected to
Willett providing services on behalf of Laidlaw even though it
knew that was occurring. 
 Hudson spoke with Grant after the March 21 pre-bid meeting. 
He asked whether Willett would be considered local. He did not
tell Grant that Willett was not a bidder under the joint venture. 
At the time he spoke with Grant, the bid had not been submitted. 
Hudson admitted that after Grant told him that Willett would be
considered local, Best Bus submitted its bid with Laidlaw as the
joint venture member. He also admitted that the 1996 joint
venture agreement did not anywhere indicate that Willett would be
doing the bus service for Laidlaw. 
 According to Hudson, Best Bus submitted the material
requested by the Board in order to demonstrate that it was local. 
Best Bus did not challenge the validity of the 2% LBP during the
pre-bid meeting, during the Board's analysis of the bids, or
during the Board's meeting convened to hear public comment on the
bids prior to voting on the awards. Hudson stated that Best Bus
did not challenge the validity of the 2% LBP until Best Bus was
informed it would not get the benefits of the preference. 
 Rachel Hubka is the president and owner of Rachel's as well
as the chief operating officer for RR. RR is composed of two
member bus companies, Rachel's Bus Company (Rachel's) and
Reliable Bus Company (Reliable). Rachel's is certified as a
"Women's Business Enterprise" (WBE). The purpose of the joint
venture is to comply with the minority participation goals set by
the Board for affirmative action. 
 Both Rachel's and Reliable were aware of the Board's
adoption of the 2% LBP and had determined that RR qualified for
the 2% LBP at the time RR submitted its bid. Hubka testified
that Rachel's met the Board's qualifications for a local
business, because Rachel's is authorized to do business in the
City of Chicago, has offices and bus facilities in Chicago, has a
license to do business in Chicago, has all its full- and part-
time employees working in the City of Chicago, and pays the head
tax imposed by the City of Chicago. 
 After reviewing the schedule of the various bids, Hubka
determined that RR was entitled to the 2% LBP and that Best Bus
was not entitled to the 2% LBP, and determined that RR would be
awarded buses based on its bid and the application of the 2% LBP. 
She took certain steps in reliance on the fact that the Board
would apply the 2% LBP in its determination of awards, such as
renewing leases with various bus companies. When the Board
notified RR of its award of type I buses, she expended monies to
prepare the buses for the upcoming school year. 
 Rachel's revenues during the 1995-96 school year amounted to
$4.5 million, of which less than 1% came from routes or vehicles
other than those awarded by the Board. Other than the public
school routes awarded under the bid, Rachel's has one year of a
three-year contract left with the Board for six nonpublic school
routes. Those routes alone are not sufficient to keep Rachel's
in business without the Board's public school routes, and
Rachel's would not be able to continue to service the nonpublic
school routes without the award of the public school routes. 
Without the public school routes, Rachel's would lose all of its
drivers, would not be able to maintain its leases on the vehicles
or the property and would be forced to terminate its full-time
and part-time staff. 
 Edmond Ellis, president and owner of Reliable, testified
that Reliable does not have a parent or subsidiary relationship
with any other company. He is also RR's administrative manager,
responsible for the day-to-day contact and relationships with the
Board. Reliable met the Board's qualifications for a local
business. In reliance on the expectation that the Board would
honor the integrity of the bid and apply the 2% LBP accordingly,
Reliable took the same steps that Hubka testified about to
prepare its buses for the school year, but with the additional
step of submitting its vehicles for emission testing. 
 Reliable's revenues during the 1995-96 school year amounted
to approximately $10 million, of which 1% to 2% percent came from
routes or vehicles other than those awarded by the Board. 
Without the public school routes, Reliable would have to close
one of its two facilities, would only be able to keep between 10
to 12 of its 50 full-time employees and would only be able to
keep 130 of its 325 part-time employees. 
 The trial court denied Best Bus' motion under count I. The
trial court found that Best Bus was not a local business as
defined by Rule 5.5 and, therefore, not entitled to a 2% LBP. 
The trial court found that Laidlaw, not Willett, was the party to
the joint venture agreement.
 As to counts II, VII and VIII, the trial court found that
Best Bus was estopped from challenging the validity of the 2%
LBP. 
 Despite its ruling estopping Best Bus from asserting the
invalidity of Rule 5.5, the trial court did rule on the
constitutionality of the statute. The court rejected Best Bus'
allegation that the 2% LBP violated the interstate commerce
clause of the United States Constitution. However, the trial
court accepted Best Bus' allegation that the 2% LBP is
unconstitutional because the Board lacks statutory authorization.
 The Board moved to reconsider that portion of the opinion
ruling on the constitutionality of Rule 5.5. The Board's motion
was denied. Plaintiffs moved to reconsider the trial court's
findings. The plaintiffs' motion was denied.
 We now address the validity of the local business
preference.
 The Illinois School Code requires that certain contracts be
awarded to the lowest responsible bidder. 105 ILCS 5/34-21.3
(West 1994). The purposes for requiring public bodies to engage
in competitive bidding are to invite competition, to guard
against favoritism, improvidence, extravagance, fraud and
corruption and to secure the best work or supplies at the lowest
price practicable. Compass Health Care Plans v. Board of
Education, 246 Ill. App. 3d 746, 751, 617 N.E.2d 6, 9 (1992);
O'Hare Express, Inc. v. City of Chicago, 235 Ill. App. 3d 202,
208, 601 N.E.2d 846, 850-51 (1992). While the competitive
bidding statute does not automatically compel the Board to award
a contract solely on the basis of lowest cost (S.N. Nielsen Co.
v. Public Building Comm'n, 81 Ill. 2d 290, 299, 410 N.E.2d 40, 44
(1980); Court Street Steak House, Inc. v. County of Tazewell, 163
Ill. 2d 159, 165, 643 N.E.2d 781, 784 (1994)), it does specify
that the contracts be awarded to the "lowest responsible bidder"
after due advertisement. 105 ILCS 5/10-20.21 (West 1994). It is
the public body that specifies the terms of the contract for
which it solicits bids and the criteria that bidders must meet in
order to be considered a "responsible bidder." Compass Health,
246 Ill. App. 3d at 751, 617 N.E.2d at 9. Thus, the law is clear
that a public body possesses great discretion in determining the
lowest responsible bidder. Financial responsibility and ability
to perform are not the only relevant factors. A contract may be
awarded to a higher bidder, "where this is done in the public
interest, in the exercise of discretionary power granted under
the laws, without fraud, unfair dealing or favoritism and where
there is sound and reasonable basis for the award as made." 10
McQuillin on Municipal Corporations 29.73a, at 429-30 (3d ed.
1966).
 The Board has certain enumerated powers granted by the
Illinois legislature. Specifically stated in the School Code is
that "the board shall also exercise all other powers that *** may
be requisite or proper for the maintenance and development of a
public school system, not inconsistent with the other provisions
in this Article *** which apply to all school districts." 105
ILCS 5/34-18 (West 1994). This section also empowers the Board
to "approve programs and policies for providing transportation
services to students." 105 ILCS 5/34-18(8) (West 1994).
 While the Board possesses a broad range of powers to
implement policies relating to education, it is limited to those
powers expressly granted by law. The Illinois Constitution
states that "school districts *** shall have only powers granted
by law." Ill. Const. 1970, art. VII, 8. 
 The Board argues that there is nothing in the School Code
that prohibits the Board from including a local preference factor
when determining who is the lowest responsible bidder. We think
that the appropriate question is whether there is anything in the
School Code that allows the Board to give preferential treatment
to local businesses.
 A reading of the School Code and the record before this
court presents nothing that expressly authorizes the Board to
create a local business preference. Section 29-6.1, which
authorizes school boards to enter into transportation contracts,
does not provide any authority for preferences in bidding. Also,
section 10-20.21, which enumerates the awarding of all contracts
based upon the lowest responsible bidder, does not grant
authority to create a local preference. The Board's Rule 5.5
appears to be designed to favor local business. As this court
stated in Cardinal Glass Co. v. Board of Education of Mendota
Community Consolidated School District No. 289, 113 Ill. App. 3d
442, 448, 447 N.E.2d 546 (1983), such favoritism, "without
adequate and sufficient justification, *** would constitute
arbitrary and capricious action." We believe that the 2% local
business preference has no proper legislative authority and is an
arbitrary and capricious delegation of power to a municipal unit
and is therefore unconstitutional.
 We now address whether Best Bus is estopped from challenging
the validity of the 2% LBP.
 On January 24, 1996, the Board adopted Rule 5.5,
establishing a 2% local business preference for contracts over
$10,000. A pre-bid meeting was held on March 21, 1996, at which
time a representative from each member of the joint venture,
along with Hudson from Willett, was in attendance. Prior to the
pre-bid meeting, a list of revisions and additions from the
previous contract containing the addition of the 2% LBP was made
available to the public. The terms and conditions of the 2% LBP
were described by McNair Grant at the pre-bid meeting, and those
same terms and conditions are set forth in the Best Bus bid.
 Every member of Best Bus, along with Willett, was aware of
the 2% LBP by the March pre-bid meeting. Plaintiffs were aware
that Laidlaw was not local, yet Laidlaw did nothing at this point
to challenge the 2% preference. In fact, Hudson, president of
Willett, asked Grant if his company would be okay under the new
rule. He testified that he was inquiring about the status of
Willett, not Laidlaw, since Laidlaw could not be considered local
under Rule 5.5. At any rate, we do not accept Best Bus' argument
that it relied upon the assurances of Grant and, therefore,
thought that it would qualify as a local company. Best Bus knew
before submitting its bid that it did not qualify as a local
business because of Laidlaw, yet it still submitted a bid with
Laidlaw listed as one of the joint venturers. Laidlaw, when
requested by the Board, submitted documents without questioning
the validity of the 2% LBP. It was only in late July when the
awards were made and Best Bus was not awarded the type I buses
that plaintiffs sought to invalidate the 2% LBP.
 In City of Wyoming v. Illinois Liquor Control Comm'n, 48
Ill. App. 3d 404, 407, 362 N.E.2d 1080, 1082-83 (1977), the court
held that "a party who fails to assert the invalidity of an
ordinance within a reasonable time after its passage[] is
estopped from so asserting if the failure resulted from that
party's lack of due diligence and the opponent has substantially
changed his position in reliance on the ordinance." The Board
had contracted with other vendors and developed bus routes to
prepare for the school year by the time Best Bus challenged the
validity of the 2% LBP. RR had incurred obligations in reliance
on being awarded the contract. To grant relief to Best Bus would
mean a rerouting of buses and schedules; rescinding current
contracts with other vendors that, in reliance on receiving the
award, prepared their buses and drivers and expended money in
other related costs; awarding new buses to new vendors; and
reinspection of buses.
 Best Bus, after attempting to benefit from the 2% LBP, now
cannot seek to challenge the Board's authority when not a
beneficiary of the new rule. Cochennet v. Ambrose, 21 Ill. 2d
520, 524, 173 N.E.2d 454, 456 (1961) ("right to question the
validity of a statute may be waived *** by any course of conduct
which shows an intention to waive any question as to the validity
of the statute"). While this court has ruled that the 2% LBP is
invalid, we find that Best Bus is estopped from challenging the
validity of this statute because it waited until it did not
receive the benefits of the ordinance before contesting it.
 Since we have determined that the 2% LBP is invalid and that
Best Bus is estopped from asserting the ordinance's invalidity,
we will not address the remaining issues.
 Accordingly, the judgment of the circuit court is affirmed.
 Affirmed.
 HARTMAN, P.J., concurs.
 HOFFMAN, J., specially concurs.
 JUSTICE HOFFMAN, specially concurring:
 I concur with the result reached by the majority in this
case. I write specially, however, to register my disagreement
with my colleagues on both substantive and procedural grounds.
 The trial court's finding that Best Bus Joint Venture (Best
Bus) was not a local business entity as defined by Rule 5.5 of
the Board of Education of the City of Chicago (Board) is amply
supported by the record. Laidlaw Transit's participation in the
joint venture resulted in a majority of Best Bus's regular full-
time work force being employed outside of the City of Chicago. 
Consequently, the trial court properly denied the plaintiffs
requested relief under count I of their amended complaint.
 I agree with the majority that Best Bus has waived the right
to challenge the constitutionality of, or Board's authority to
promulgate, the 2% local business preference (LBP) set forth in
Rule 5.5 and the subject bid specifications. By participating in
the Board's bidding process under Rule 5.5 and seeking to avail
itself of the benefits of the 2% LBP without questioning the
constitutionality of such a preference or the Board's power to
enact it, Best Bus waived its right to challenge the validity of
Rule 5.5 and the LBP on either statutory or constitutional
grounds. See Calabrese v. State Farm Mutual Automobile

 19
Insurance Co., 187 Ill. App. 3d 349, 543 N.E.2d 215 (1989). The
trial court, therefore, properly denied the plaintiffs injunctive
relief under counts II, VII and VIII of their amended complaint.
 For the reasons stated above, and only for those reasons, I
concur in the result reached by majority in this case. 
 Substantively, I cannot agree that Best Bus was estopped to
raise the invalidity of Rule 5.5 or the Board's LBP. Equitable
estoppel is a doctrine which acts to preclude a party from
asserting rights against another who, in good faith, relied upon
the party's voluntary representations or conduct, and was
thereby led to change its position for the worse. Trochelman v.
Village of Maywood, 259 Ill. App. 3d 1, 631 N.E.2d 334 (1994); 
Stoller v. Exchange National Bank of Chicago, 199 Ill. App. 3d
674, 557 N.E.2d 438 (1990). Nothing in the record in this case
reflects that either the Board or RR Bus Service Joint Venture
(RR Bus) changed its position in reliance upon any representation
or conduct of the plaintiffs. Bust Bus did not induce the Board
to enact Rule 5.5 or the LBP; it did not induce the Board to
advertise for bids; and it did not, by representation, action or
inaction, induce RR Bus to participate in the subject bidding
process. To my mind, the majority confuses waiver and estoppel. 
The doctrines are similar, but they are not identical.
 Lastly, I believe that the majority should have refrained
from addressing the validity of Rule 5.5 and the Board's LBP. 
Once having found that Best Bus did not qualify as a local
business entity under Rule 5.5 and that it had waived the right
to challenge either the rule or the LBP, nothing more need have
been stated. Particularly troubling to me are the majority's
constitutional findings. Constitutional questions should be
avoided when the issue before a court can be decided on other
grounds. Rescue Army v. Municipal Court, 331 U.S. 549, 568-69,
91 L. Ed. 1666, 67 S. Ct. 1409 (1947); People v. Mitchell, 155
Ill. 2d 344, 356, 614 N.E.2d 1213 (1993).